

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00063-CR

_____

JAMES DIXON GRAVES, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th Judicial District Court
Morris County, Texas
Trial Court No. 9907

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

James Dixon Graves, Jr., was convicted by a jury for several counts of aggravated sexual assault of a disabled individual and indecency with a child. In appealing the trial court's judgments, Graves complains that it erred in denying his motion to suppress evidence stemming from a traffic stop. Graves argues that the trial court should have authorized funds to allow an expert to conduct a physical examination of an allegedly disabled witness. Finally, he contends the trial court erred in overruling his motion for mistrial. We affirm the trial court's judgments.

## I.     Factual and Procedural Background

A cup of liquid was thrown out of Graves' vehicle as it was being pulled over by Officer Scott Burns for an expired registration sticker. Additional plastic cups and ice were plainly visible in the vehicle carrying twenty-year-old Carol Noguera and eighteen-year-old Aaron Seyfer. Graves was arrested for furnishing minors with alcohol. A search of the passenger compartment produced two bottles of alcoholic beverages, and a fully loaded .22 caliber handgun. In the trunk, the officer found several disturbing items including three fully loaded handguns, four digital cameras, a camcorder, two tripods, an electrical sex toy, and pornographic DVDs.

Noguera, who was also arrested for being a felon in unlawful possession of a handgun, told officers that Graves was going to film her having sex with Seyfer in exchange for money. She described an instance where she slept in Graves' home when she was fifteen after he had given her alcohol, and she woke with her pubic hair shaved. Noguera claimed that Graves had filmed her

2

performing sexual acts in exchange for money, that she had witnessed other women perform sexual acts with and for Graves in exchange for money, that she had recently observed pornographic pictures taken by Graves, and stated that Graves possessed in excess of six obscene devices at his residence. Noguera also stated she believed Graves had pornography on his cameras and computers. Based on an affidavit filed by Burns, a magistrate judge signed a warrant authorizing a search of Graves' residence. The search produced numerous pornographic videos, pictures, and sexual devices. "There were also kids toys and items that would be associated with kids located inside his house. Specific items of interest were several Barbie dolls in Graves's bedroom."

After Burns was killed in the line of duty, Officer Billy Mack Harrison continued the investigation. His interview with Noguera resulted in her statement that she had taken Sharon Ebert, a person Harrison personally knew to be disabled, to Graves' home to be filmed performing oral sex on Graves in exchange for money. Harrison's review of the tapes obtained as a result of the first search warrant confirmed Noguera's statement and revealed "saved images of young children nude and engaging in illegal sex acts which constitutes child pornography." "In one tape, Graves coaxe[d] Ebert by offering to go get Winnie the Pooh." Photographs made by police executing the first search warrant depicted "whips, masks, restraints, sex toys, dildos, costumes, dozens of pornographic videos adjacent to children's toys and dolls (both life-like and Barbi-style

3

[sic] dolls), [and] Cinderella bedspreads." Harrison signed an affidavit containing his findings in seeking a second search warrant for Graves' residence, which produced similar evidence.

A review of the evidence led to the following counts upon which Graves was convicted by a jury:

| Our cause number[1] | Description | Statute[2] and Number of Counts | Sentence |
|---|---|---|---|
| 06-09-00063-CR | Lewd exhibition of the genitals of children | § 43.26 Possession of child pornography / Ten counts | Ten years TDCJ Concurrent |
| 06-09-00064-CR | Actual deviant sexual intercourse between children | § 43.26 Possession of child pornography / Two counts | Ten years TDCJ Concurrent |
| 06-09-00065-CR | Simulated sexual intercourse between children | § 43.26 Possession of child pornography / Two counts | Ten years TDCJ Concurrent |
| 06-09-00066-CR | Aggravated Sexual Assault of Sharon Ebert | § 22.021 Agg. Sexual Assault of Disabled/ Thirteen counts | Seventy-five years TDCJ Concurrent |
| 06-09-00067-CR | Indecency with Noguera | § 21.11 Indecency with a Child/ Two counts | Twenty years TDCJ Concurrent |
| 06-09-00068-CR | Aggravated Sexual Assault of Sharon Ebert | § 22.021 Agg. Sexual Assault of Disabled/ One count | Seventy-five years TDCJ Concurrent |
| 06-09-00069-CR | Aggravated Sexual Assault of Sharon Ebert | § 22.021 Agg. Sexual Assault of Disabled/ Two counts | Seventy-five years TDCJ Concurrent |
| 06-09-00070-CR | Indecency with Noguera | § 21.11 Indecency with a Child/ Three counts | Twenty years TDCJ Concurrent |

---

[1] Graves appeals from this cause number and judgments entered in cause numbers 06-09-00064-CR through 06-09-00070-CR.

[2] All sections cited refer to the Texas Penal Code.

4

On appeal of all judgments, Graves complains that the trial court erred in denying his: (1) motion to suppress the evidence; (2) request for funds to hire an expert; (3) request to have Ebert examined by the expert as to her disability and competency to testify; and (4) motion for mistrial. Graves also complains that the evidence was insufficient to establish Ebert was disabled under the Texas Penal Code.

## II. The Trial Court Did Not Err in Overruling Graves' Motion to Suppress the Evidence

### A. Standard of Review

First, Graves complains of the trial court's denial of his motion to suppress. Specifically, he claims that the reports, affidavits, and recordings by Burns demonstrating the legality of the traffic stop should not have been admitted during the hearing because they constituted hearsay and violated his Confrontation Clause rights. Graves next suggests that the affidavit by Burns contains false statements and that the sworn affidavit contained insufficient facts from which the magistrate could find probable cause that child pornography could be found at his residence. Finally, he argues that the magistrate was without authority to sign the evidentiary search warrants. Because the second warrant stemmed from the first, Graves claims "it is poisoned fruit of the vehicle search tree" and urges that all evidence obtained as a result of the second warrant should also be suppressed.

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana

5

2009, pet. ref'd); *Elardo v. State*, 163 S.W.3d 760, 764 (Tex. App.—Texarkana 2005, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Rogers*, 291 S.W.3d at 151; *Elardo*, 163 S.W.3d at 764.

B.      *The Trial Court Properly Admitted Burns' Affidavits, Reports, and Recordings*

With the exception of privileges, the Rules of Evidence do not apply to suppression hearings because they involve the determination of preliminary questions.  *Vennus v. State*, 282 S.W.3d 70, 72 n.1 (Tex. Crim. App. 2009); *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002); *Campbell v. State*, 910 S.W.2d 475, 480 (Tex. Crim. App. 1995) (hearsay is admissible at suppression hearings to demonstrate probable cause to arrest).  Further, this Court has held that the right of confrontation does not attach until trial.  *Ford v. State*, 268 S.W.3d 620, 621 (Tex. App.—Texarkana 2008), *overruled on other grounds*, No. 06-08-00046-CR, 2009 WL 3365661, at *3 (Tex. Crim. App. Oct. 21, 2009) ("The prosecutor obviously understood appellant's objection because she responded appropriately:  Hearsay is admissible in a pretrial suppression hearing; the Confrontation Clause does not apply to a pre-trial suppression hearing.").  This was also the holding of the Dallas Court of Appeals in *Vanmeter v. State*, 165 S.W.3d 68, 74 (Tex. App.—Dallas 2005, pet. ref'd).  Many other jurisdictions have held that the federal

Confrontation Clause does not apply to preliminary hearings. *People v. Felder*, 129 P.3d 1072, 1074 (Colo. Ct. App. 2005); *Gresham v. Edwards*, 644 S.E.2d 122, 124 (Ga. 2007); *State v. Rivera*, 192 P.3d 1213, 1218 (N.M. 2008); *Sheriff v. Witzenburg*, 145 P.3d 1002, 1003 (Nev. 2006); *State v. Woinarowicz*, 720 N.W.2d 635, 641 (N.D. 2006). Thus, Graves' first complaint—that the trial court erroneously denied his objections to the affidavit, reports, and recording of Burns because they constituted hearsay and violated his fundamental right of confrontation and cross-examination under *Crawford v. Washington*[3] fails.

### C. Search of the Vehicle Was Lawful

A routine traffic stop closely resembles an investigative detention. *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984). Because an investigative detention is a seizure that implicates the United States and Texas Constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). "If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). Having an expired registration sticker is a traffic offense. *See* TEX. TRANSP. CODE ANN. § 502.407 (Vernon Supp. 2009).

The Burns affidavit stated:

> I stopped a vehicle . . . for an expired registration sticker and when I was behind the vehicle and almost had it stopped I observed an occupant throw a plastic drink cup out of the window. The vehicle was occupied by the driver, James Dixon

---

[3]541 U.S. 36 (2004).

7

> Graves, Jr., white male 61 years of age, Carol Noguera white female 20 years of age and Aaron Seyfer white male 18 years of age.
>
> . . . .
>
> After Mr. Dixon [sic] exited the vehicle I smelled an odor of alcohol. The other two occupants appeared to be under the age of 21 and were asked to exit the vehicle. I observed two-ice cup [sic] in the console and a[n] ice cup in the storage container of the back seat. I observed a bottle of alcohol on the passenger floorboard after which I looked under both of the front seats and found a 22 Derringer in a black bag under the driver seat. At that time Mr. Graves was placed under arrest for making alcohol available to a minor (I had already learned that both of the other occupants were under the age of 21).
>
> . . . .
>
> The minors were both convicted felons and were arrested for felon in possession of firearm and minor in possession of alcohol.

Burns had a reasonable basis for suspecting Graves' violation of the Texas Transportation Code. Thus, we conclude the initial stop for the expired registration sticker was lawful.

If an officer develops a reasonable suspicion that criminal activity is occurring during the course of a valid traffic stop, a continued detention is justified. *Zervos*, 15 S.W.3d at 151. An officer may rely on all of the facts ascertained in the course of his or her contact with a defendant to develop articulable facts that would justify continued detention. *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd). Once a vehicle is stopped, an officer is authorized to "question a passenger and request identification without separate reasonable suspicion of the passenger." *St. George v. State*, 237 S.W.3d 720, 722 (Tex. Crim. App. 2007); *Duff v. State*, 546 S.W.2d 283, 286 (Tex. Crim. App. 1977).

8

Also, the automobile exception to the Fourth Amendment requirement of a warrant for search or seizure permits law enforcement to conduct a warrantless search of the vehicle if: (1) it is readily mobile and; (2) there is probable cause to believe a crime has been committed and the vehicle contains contraband. *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009); *Blaylock v. State*, 125 S.W.3d 702, 705 (Tex. App.—Texarkana 2003, pet. ref'd). Ready mobility of a vehicle creates an exigency. *Keehn*, 279 S.W.3d at 335 (citing *California v. Carney*, 471 U.S. 386, 393 (1985)). Probable cause to search requires that the officer have a reasonable belief, based on facts and circumstances within his or her personal knowledge, or of which the officer has reasonably trustworthy information, to warrant a reasonably prudent person to conclude that items connected with criminal activity will be found in a particular place. *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Wiede v. State*, 214 S.W.3d 17, 26 (Tex. Crim. App. 2007).

Burns obtained the identification of Noguera and Seyfer, both underage and both convicted felons. He smelled alcohol on Graves and observed two plastic cups inside the car in addition to the cup that was thrown out of the window. Noguera told Burns the cup thrown out of the window belonged to Graves. Testimony during the motion to suppress hearing revealed that Graves knew Noguera and Seyfer were minors. Burns had reasonable suspicion at that time that Graves had furnished alcohol and was consuming alcohol while driving. TEX. ALCO. BEV. CODE ANN. § 106.06 (Vernon 2007); *see McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003).

9

Based on the totality of the circumstances, we conclude the warrantless search of the passenger compartment of the vehicle was justified.

Next, a peace officer may arrest an offender without a warrant for any offense committed in his or her presence or within the officer's view. TEX. CODE CRIM. PROC. ANN. art. 14.01 (Vernon 2005). During the search of the passenger compartment of the vehicle for alcohol which produced an open container of alcoholic beverage, Burns found a fully loaded handgun with five live rounds of ammunition. Noguera and Seyfer were arrested for unlawful possession of a firearm by a felon, and Graves was arrested for unlawfully carrying a weapon.[4] Deputy Elizabeth Hall transported Noguera and Seyfer to jail, and Danny Rainey arrived at the scene to assist with Graves' arrest.

At that point, a tow truck was called, and Burns' affidavit and report stated he began an inventory search of the vehicle, including the trunk. "When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (holding standard inventories pursuant to police policy reasonable). Inventories serve to protect the owners' property while in custody and protect the police from claims, disputes, or danger. *Kelley v. State*, 677 S.W.2d 34,

---

[4]"A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun in a motor vehicle that is owned by the person or under the person's control at any time in which: . . . (2) the person is: (A) engaged in a criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic" or is "prohibited by law from possessing a firearm." TEX. PENAL CODE ANN. § 46.02(a-1)(2) (Vernon Supp. 2009). Furnishing alcohol to a minor is a class A misdemeanor. TEX. ALCO. BEV. CODE ANN. § 106.06. "A person who has been convicted of a felony commits an offense if he possesses a firearm: (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction." TEX. PENAL CODE ANN. § 46.04(a)(1) (Vernon Supp. 2009).

37 (Tex. Crim. App. 1984); *Garza v. State*, 137 S.W.3d 878, 882 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Opperman*, 428 U.S. at 369); *Madison v. State*, 922 S.W.2d 610, 612 (Tex. App.—Texarkana 1996, pet. ref'd) (holding an inventory search of trunk reasonable after an arrest for traffic violation). The inventory must be conducted in good faith pursuant to reasonable and standardized procedure. *Garza*, 137 S.W.3d at 882 (citing *Colorado v. Bertine*, 479 U.S. 367, 374 (1987)). During a motion to suppress, the State bears the burden of proving lawful impoundment. *Delgado v. State*, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986). It must demonstrate that the driver was arrested, no alternatives other than impoundment were available to ensure the automobile's protection, the impounding agency had an inventory policy, and the policy was followed. *Id*.; *see Madison*, 922 S.W.2d at 613.

In this case, Graves' passengers were arrested and taken to jail while Graves stayed behind with Burns and Rainey. Where, as here, "[n]o other person was available to take custody of the car . . . , impoundment was necessary to secure protection of the vehicle," which was stopped on the side of the road. *Delgado*, 718 S.W.2d at 721; *Garza*, 137 S.W.3d at 882 ("We note that peace officers need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist."). Gleason testified the Marion County Department of Public Safety had a policy to inventory a vehicle if it needed to be towed. A "Texas Department of Public Safety Property Inventory" report was filled out by Burns stating the vehicle would be taken and stored at Lohman's Wrecker Service in Jefferson, Texas.

11

The inventory form instructs officers to mark the location of items found and gives "trunk" as a standardized option. Burns' affidavit, report, and inventory form indicate he complied with the police policy for inventory searches. *See Yaws v. State*, 38 S.W.3d 720, 722–24 (Tex. App.—Texarkana 2001, pet. ref'd) (upholding inventory search at scene prior to impoundment where consistent with police policy).

Therefore, we conclude the search of the trunk, was an authorized inventory search.

D.    *The Affidavit Was Sufficient for the Magistrate to Find Probable Cause that Evidence of Violation of Obscenity Law Was Probably Located in Graves' Residence*

Because "[n]o warrant to search any place or to seize any person or thing shall issue . . . without probable cause," an application for a search warrant must be supported by an affidavit setting forth sufficient facts establishing probable cause. TEX. CODE CRIM. PROC. ANN. art. 1.06 (Vernon 2005), art. 18.01(b) (Vernon Supp. 2009). The facts submitted to the magistrate must justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986).

Our review of whether probable cause existed for the issuance of the warrant is limited to the four corners of the supporting affidavit.[5] *Rogers*, 291 S.W.3d at 152; *Elardo*, 163 S.W.3d at 765 (citing *Oubre v. State*, 542 S.W.2d 875, 877 (Tex. Crim. App. 1976)). Due to this limitation, "there are no credibility choices to be made by the trial court in examining the sufficiency of an

---

[5]Because appellate review only involves the four corners of the affidavit, Graves' complaint that he did not have the opportunity to cross-examine Burns regarding the facts contained therein has no merit.

affidavit to establish probable cause," and we give great deference to the magistrate's probable cause determination and sustain the issuance of the warrant if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Burk v. State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd); *see Davis v. State*, 202 S.W.3d 149 (Tex. Crim. App. 2006); *Swearingen v. State*, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004); *Rogers*, 291 S.W.3d at 151; *Elardo*, 163 S.W.3d at 765 (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). We interpret affidavits supporting warrants in a common-sense and realistic manner because warrants should not be invalidated through a "hypertechnical" interpretation of their supporting affidavits. *Gates*, 462 U.S. at 236; *Rogers*, 291 S.W.3d at 15; *Elardo*, 163 S.W.3d at 765 (citing *Gibbs v. State*, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991)). The magistrate who reviews an affidavit may draw inferences from the facts contained therein. *Elardo*, 163 S.W.3d at 765. "If in a particular case it may not be easy to determine whether an affidavit demonstrates the existence of probable cause, the resolution of such doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Id.* (quoting *State v. Walker*, 140 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

The relevant portions of Burns' affidavit include:

I located 4 digital cameras, a video recorder, 2 pornographic tapes, 1 DVD player with pornographic DVD, and another pornographic DVD. The titles of the DVD's were "Cum Dumpster" and "Facial Shots" depicting a young female with male ejaculate on her face. Also found were 2 Camera tripods, a 14" Conair vibrator, condoms and viagra.

13

. . . .

Noguera, the white female was 4'11" tall and weighed 94 lbs and had the appearance of a girl approximately 16 years of age. . . . She told me that they were on their way to Shreveport, Louisiana to spend the night at a motel. She stated that Graves was going to pay her $150.00 to let Graves film her engaging in sexual acts with her boyfriend, Seyfer. She further stated that she had known Graves for a long time; and that when she was 15 years of age he provided her with alcohol to which she drank. She recalls waking up later and finding that her pubic hair had been shaved. This occurred at his residence. . . .

. . . .

She further stated that Graves had videoed [sic] taped her engaging in sexual performances, sometimes alone and sometimes with other actors. The last such taping occurred approximately 1 month ago. She has also brought another female name[d] Dessert to Graves house who was also petite and the age of 18 to perform sexual acts on Graves. She has personal knowledge and has viewed pornographic pictures and videos of individuals photographed by Graves which are concealed on the premises. She has observed these pornographic pictures within the last 10 days. She has also heard him talk about downloading pornographic pictures on the computer at the residence. She has also told this officer that she believes he has pornographic pictures and or videos in the cameras which are located in his vehicle . . . . Noguera also stated that there were in excess of 6 sexual devices in the residence.

While the affidavit may not have established probable cause that Graves' residence contained child pornography, it did specifically state that the officer believed the residence contained "pornography material in violation of penal code section 43.23." That section, entitled "Obscenity," provides: "[a] person commits an offense if, knowing its content and character, he: (1) promotes or possesses with intent to promote any obscene material or obscene device; or (2) produces, presents, or directs an obscene performance or participates in a portion thereof that is

14

obscene or that contributes to its obscenity." TEX. PENAL CODE ANN. § 43.23(c) (Vernon Supp. 2009).[6] "A person who possesses six or more obscene devices or identical or similar obscene articles is presumed to possess them with intent to promote the same." TEX. PENAL CODE ANN. § 43.23(f) (Vernon Supp. 2009).

"Obscene" means material or a performance that depicts or describes "patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy" or "patently offensive representations or descriptions of masturbation [or] excretory functions." TEX. PENAL CODE ANN. § 43.21(1)(B) (Vernon 2003). "'Obscene device' means a device including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs." TEX. PENAL CODE ANN. § 43.21(7) (Vernon 2003). "'Patently offensive' means so offensive on its face as to affront current community standards of decency." TEX. PENAL CODE ANN. § 43.21(4) (Vernon 2003).

The affidavit was sufficient to establish, at a minimum, that Graves possessed obscene devices with intent to promote them.[7] Also, because the trunk of Graves' car contained four

---

[6]We note that this statute was held unconstitutional by *Reliable Consultants, Inc. v. Earle* a few days before the affidavit was signed. 517 F.3d 738 (5th Cir. 2008). However, as our sister court in *Villarreal v. State* stated, "Fifth Circuit precedent is not binding on Texas courts, and its constitutional pronouncements are highly persuasive at best." 267 S.W.3d 204, 208 (Tex. App.—Corpus Christi 2008, no pet.). "This Court thus remains duty-bound, for better or worse, to follow the rulings of the court of criminal appeals, which has held -- in contrast to the Fifth Circuit -- that section 43.23 does not violate the due process clause of the Fourteenth Amendment." *Id.* at 209. Graves neither raised any constitutional challenge to this statute, nor did he address the issue of whether the affidavit was sufficient to establish that evidence of a violation of this section would probably be found at Graves' residence.

[7]"Promote" includes giving, providing, presenting, or exhibiting obscene material or devices. TEX. PENAL CODE ANN. § 43.21(a)(5) (Vernon 2003).

15

digital cameras, two tripods, an electrical sex toy, and because Noguera's statements clarified that Graves had, and was going to film her engaging in sexual activity, the issuing magistrate could have determined Graves was producing or directing an obscene performance. Because Noguera stated pornographic pictures and videos of individuals photographed by Graves were concealed within his residence at least ten days before the affidavit was signed, the magistrate had probable cause to determine that obscene materials in violation of Chapter 43 of the Texas Penal Code were probably on the premises. Thus, the trial court did not err in denying Graves' motion to suppress the evidence based on sufficiency of the warrant's supporting affidavit.

E.    *Graves Did Not Meet His Burden to Show False Statements Were in the Affidavit*

Graves alleges that Burns' affidavit contained "false and misleading statement, known by Trooper Burns and the prosecutor to be false and misleading." The purported false information includes the statement that Noguera revealed there were in excess of six sexual devices in Graves' residence, the residence *may* contain pornographic material involving children, and Noguera appeared to be sixteen years of age.

Graves was required to make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant," or that the false statement was "necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Gleason stated that he heard Noguera say she only saw three or four sexual devices during her interview, which was recorded on video. However, he clarified

16

that he had conversations with Noguera which were not recorded in which she revealed there were "a bunch" of sexual devices. Neither of these statements establish that Burns, who could have also had conversations with Noguera which were not video recorded, included a false statement knowingly, intentionally, or with reckless disregard for the truth. Also, the affidavit specifically stated Noguera was twenty years of age, and the opinion that the residence may contain evidence of child pornography was not demonstrated to be a false statement of fact. In any event, as demonstrated above, none of the allegedly false statements were necessary to a finding of probable cause. If the alleged false statements are excised from the affidavit, and it is still sufficient to establish probable cause, an appellant's challenge fails. *Ramsey v. State*, 579 S.W.2d 920, 922–23 (Tex. Crim. App. 1979). Thus, Graves could not meet his preliminary burden under *Franks*.

F.       *The Magistrate Judge Had Authority to Sign the Second Warrant*

Graves complains that the magistrate judge was without authority to issue the second search warrant in this case. Article 18.02 enumerates items for which search warrants may be issued, including "obscene materials kept or prepared for commercial distribution or exhibition," "any property the possession of which is prohibited by law," and "implements or instruments used in the commission of a crime." TEX. CODE CRIM. PROC. ANN. art. 18.02(6), (8), (9) (Vernon 2005), art. 59.01(2) (Vernon Supp. 2009). "Specific items not listed in . . . [these subsections] . . . may be sought in a search warrant under the catch-all language of subsection

17

(10)," which authorizes warrants for "property or items . . . constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." *Scott v. State*, 868 S.W.2d 430, 432 (Tex. App.—Waco 1994, pet. ref'd); TEX. CODE CRIM. PROC. ANN. art. 18.02(10) (Vernon 2005); *see State v. Acosta*, 99 S.W.3d 301, 303 (Tex. App.—Corpus Christi 2003, pet. ref'd); *Lovely v. State*, 894 S.W.2d 99, 102 (Tex. App.—Beaumont 1995, pet. ref'd); *Chavez v. State*, 769 S.W.2d 284, 286 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd); *Martin v. State*, 727 S.W.2d 820, 821 (Tex. App.—Fort Worth 1987, no pet.).   Warrants issued under the subsection (10) catch-all are called evidentiary warrants.[8]   *Mullican v. State*, 157 S.W.3d 870, 873 (Tex. App.—Fort Worth 2005, pet. ref'd).   Generally, warrants issued under Article 18.02(10) must be issued by a "judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, a district court judge, a judge of the Court of Criminal Appeals . . . or a justice of the Supreme Court of Texas."   TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon Supp. 2009).

However, subsection (i) of Article 18.01 states:

> In a county that does not have a judge of a municipal court of record who is an attorney licensed by the state, a county court judge who is an attorney licensed by the state, or a statutory county court judge, any magistrate may issue a search warrant under Subdivision (10) or Subdivision (12) of Article 18.02 of this code. This subsection is not applicable to a subsequent search warrant under Subdivision (10) of Article 18.02 of this code.

---

[8]Graves complains that the second search warrant was evidentiary in nature.   Our ruling does not imply that it was.

18

TEX. CODE CRIM. PROC. ANN. art. 18.01(i) (Vernon Supp. 2009); *Muniz v. State*, 264 S.W.3d 392, 396 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The record demonstrated that Morris County did not have a municipal or county judge who was a lawyer and that there was no statutory county judge.

Graves cites this Court to the last part of subsection (i) stating it is inapplicable to subsequent search warrants under subsection (10) of Article 18.02. However, there was no complaint that the first warrant issued in this case was an evidentiary warrant. In fact, the first warrant specified subsections (6), (8), and (12) of Article 18.02. Thus, even if we assume, without deciding, that the second warrant was evidentiary, it would have been the first warrant under subsection (10), which the magistrate judge would be authorized to issue pursuant to Article 18.01, subsection (i).

This point of error is overruled.

### III.     Sufficient Evidence Established Ebert Was Disabled

Graves only challenges the sufficiency of the jury's finding that Ebert was disabled. When conducting a legal sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). Evidence is factually insufficient when examined under a neutral light only when it

is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd). We give full play to the jury's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson*, 23 S.W.3d at 7; *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

Our analysis of whether the evidence is legally and factually sufficient is measured against the elements of the offense with the same kind of analysis as that applied in the test for a hypothetically correct jury charge for the case.[9] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. *Grotti*, 273 S.W.3d at 281.

---

[9]*Malik* controls "even in the absence of alleged jury charge error." *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001).

"A person commits an offense: (1) if the person: (A) intentionally or knowingly: . . . (ii) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent . . . (2) if: . . . (C) the victim is [a] . . . disabled individual." TEX. PENAL CODE ANN. § 22.021(a) (Vernon Supp. 2009). A disabled individual is "a person older than 14 years of age who by reason or age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself." TEX. PENAL CODE ANN. § 22.04(c)(3) (Vernon Supp. 2009).

Several witnesses testified Ebert was disabled under the Penal Code including: school nurse Martha Baker, who worked with Ebert regularly over a period of several years, Officers Harrison and Larry Fleet, and Ebert's relative, Seyfer. Baker, Harrison, Fleet, Seyfer, and Noguera all stated Ebert was unable to take care of her hygiene. Baker specifically stated about Ebert, "Any activities of daily living did not seem to stay with her, and when I would consult with the mother on that on numerous occasions, we discovered that she could not remember what had been taught as far as her daily care and needs." Noguera testified there were instances where Ebert would "put her bra on backwards," indicating she was even unable to dress herself. These witnesses did not believe Ebert would be able to protect herself from harm. Additionally, Seyfer stated Ebert was unable to provide food, shelter, and medical care for herself. Records from the Social Security Administration and Texas Rehabilitation Commission demonstrated Ebert was diagnosed with mental retardation, which her school district qualified as "moderate." Psychiatric

reviews diagnosed her with autism as well. A report on Ebert conducted when she was sixteen concluded she had first grade level reading, writing, and math skills. Where 100 was classified as normal, Ebert's verbal IQ score was forty-seven, performance scale was fifty-four, and full IQ was forty-six. Baker testified Ebert's results would not improve with age.

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational jury could have found Ebert was disabled beyond a reasonable doubt. *Hooper*, 214 S.W.3d at 13. Thus, we find the evidence was legally sufficient for the issue to go before the jury.

Graves offers the fact that Ebert was married and had children as contrary proof that she "understood the nature and consequences of sexual activity." Thus, Graves suggests it was Ebert's conscious decision to return to Graves repeatedly to have sexual encounters with him in exchange for money. Graves highlighted Baker's cross-examination in which she acknowledged uncertainty in changes concerning Ebert's adaptive functioning when last evaluated at sixteen. Finally, Graves pointed to a court's previous acceptance of Ebert's guilty plea in a criminal case against her for engaging in organized criminal activity.

We do not find that the contrary proof demonstrates the verdict is manifestly unjust, shocks the conscience or clearly demonstrates bias. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The jury was aware of the contrary evidence and could choose to disregard it. Thus, keeping in mind the appropriate deference to be given to the jury's ability to weigh the

evidence, we conclude it was factually sufficient to establish disability under the Texas Penal Code. *See generally Benton v. State*, 237 S.W.3d 400 (Tex. App.—Waco 2007, pet. ref'd).

**IV.** **The Trial Court Did Not Deny Graves' Request for an Expert and Ebert's Competency Was Not an Issue Since She Did Not Testify**

Graves contends the trial court erred in denying him the funds to have Ebert examined to determine if she was disabled and competent to testify. The record demonstrates otherwise.

First, the motion filed with the court did not ask that an expert decide whether Ebert was disabled under the Texas Penal Code. Rather, the motion asked that the expert be allowed to determine if Ebert was competent to testify. Ebert did not testify against Graves. Because there is no real controversy to resolve, the issue of competency is moot.[10]

During pretrial hearings, counsel made the following request:

> So what we're asking in that motion is for the Court to allow what's necessary to have an examination of at least the records that relate to the performance, mental capacity, and so forth of the complaining witness, Sharon Ebert, and that that be done by competent expert, and I would think that would be a psychologist or psychiatrist and that that would require, I believe, your Honor, first of all, gathering some records to show what the history's been.
>
> It may be an examination, and the examination might be foregone if the records would give the expert enough information to make the determination.
>
> . . . .

---

[10]Graves did not provide the court with any authority suggesting a trial court is authorized to order an expert examination to determine competency of a witness, a threshold determination which should be conducted by the trial judge. Caselaw suggests courts are without authority to "force a complaining witness to submit to such an invasion of her right to privacy." *State ex rel. Holmes v. Lanford*, 764 S.W.2d 593, 594 (Tex. App.—Houston [14th Dist.] 1989, orig. proceeding) (conditionally granting mandamus relief from trial court order requesting State to produce witness to subject her to psychological evaluation for competency); *see In re State ex rel. Robinson*, 116 S.W.3d 115 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding) (same).

So we're asking for a subpoena for those records, submit them to an expert, let the Court order them to get us those records, and at least -- in the first stage -- let an expert . . . determine whether the witness reaches a threshold, first of all, of competency to testify and secondly, ability to consent, which still may be a jury issue.

The court made the following pronouncement:

And the Court, at this time, will -- I will not order that an expert be allowed to physically examine the victim. However, I am going to order that the defendant -- if either the defendant has the ability to hire the expert and if in the event the Court does not find that he does not have the ability, then the Court will consider appointing an expert to at least review the records of the victim.

. . . I would want your client to testify as to whether or not he's indigent or not.

Graves took the stand and testified that he was unaware of his current income. However, he stated that he received $2,800.00 per month from social security and the Veteran's Administration, $750.00 per month in royalty payments, had forty to fifty acres of land, and owned furniture, motorcycles, and several vehicles. At the conclusion of the first pretrial hearing, the court instructed Graves "to go ahead and tell [the requested expert] to get started on the subpoenas of all those other issues." Yet, the court did not rule on the issue of whether funds would be available to Graves for use of the expert. Instead, the court asked for Graves "to sign a sworn affidavit to the Court setting out all the properties and moneys [sic] he's getting and his income as well."

At the next pretrial hearing, Graves' counsel stated, "I've come back to the court with the prosecutor present and said that under the circumstances, the family could pay for the expert if the Court could continue to provide counsel, and that we would hire as a defense expert some

psychologist." The expert chosen by Graves did not testify until the punishment phase of the trial. Thus, Graves abandoned the request for funds to pay for an expert, and the trial court complied with Graves' request in ordering records be turned over to the chosen expert.

We conclude this point of error is without merit. It is overruled.

## V. Graves Failed to Preserve Error Regarding Any Improper Statements by the State

During trial, the State played a video recording of Ebert engaging in sexual activity with Graves. While the video recording was playing, the State said, "Judge, I think I've seen enough of it." Graves objected by stating the comment was improper and intended to prejudice the jury. The State clarified, "What I mean is, Judge, I conclude my offer of the tape and am willing to stop it at this time." The court instructed the jury to disregard the State's comment and subsequently overruled Graves' motion for mistrial.

A mistrial is only required where an improper question or comment is clearly prejudicial to the defendant and is of such character to suggest impossibility of withdrawing the impression produced on the minds of the jury. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). It is not required where prejudice is cured by an instruction to the jury to disregard. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Counsel has not provided this Court with any authority or harm analysis to support his position that the State's comments were "so prejudicial and suggestive to the jury that it prevented the jury from making a fair assessment." We will presume the jury complied with the court's instruction to disregard and hold the trial court did not

25

err in overruling the motion for mistrial. *Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000). The last point of error is overruled.

## VI. Conclusion

We affirm the trial court's judgments.


Jack Carter
Justice

Date Submitted:    February 5, 2010
Date Decided:    February 24, 2010

Publish