

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00171-CR

DANIEL OLGUIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 11F0890-202

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Daniel Olguin pleaded guilty to and was convicted of felony driving while intoxicated (DWI).[1] *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West Supp. 2013). On appeal, Olguin argues that the arresting officer did not have reasonable suspicion to conduct the traffic stop which resulted in his arrest for DWI.[2] We disagree with Olguin and affirm the trial court's judgment.

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and its resolution of questions not turning on credibility. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Since all the evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of Olguin's motion to suppress if it was supported by the record and was

---

[1]Olguin was sentenced to ten years' imprisonment and was ordered to pay a $3,000.00 fine. Pursuant to a plea agreement, the sentence was suspended in favor of ten years' community supervision. Olguin was also ordered to pay the fine within twenty-four months, complete 240 hours of community service, surrender his driver's license for six months, and maintain an ignition interlock device on his vehicle.

[2]The guilty plea was conditioned on Olguin's right to appeal the trial court's denial of his motion to suppress the evidence obtained as a result of this routine traffic stop.

correct under any theory of law applicable to the case. *See Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

A routine traffic stop implicates both the United States and Texas Constitutions and, under both, must be reasonable. *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984); *Earl v. State*, 362 S.W.3d 801, 802 n.2 (Tex. App.—Texarkana 2012, pet. ref'd); *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. Law enforcement officers may stop and briefly detain individuals suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). To make an investigative stop, the officer must possess a reasonable suspicion based on specific, articulable facts that—in light of the officer's experience and general knowledge—would lead the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 9–10 (1989); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd); *see Graves*, 307 S.W.3d at 489. This is an objective standard that disregards any subjective intent of the officer making the stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The facts used to support the investigate stop must support more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

The Texas Transportation Code states, "A taillamp or a separate lamp shall be constructed and mounted to emit a white light that: (1) illuminates the rear license plate; and (2) makes the plate clearly legible at a distance of 50 feet from the rear." TEX. TRANSP. CODE ANN. § 547.322(f) (West 2011). "If an officer has a reasonable basis for suspecting that a person

has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos*, 15 S.W.3d at 151; *Graves*, 307 S.W.3d at 489; *see* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005).

Here, the evidence obtained from the suppression hearing and the video recording of the traffic stop demonstrate Trooper Michael Ferguson's reasonable suspicion that Olguin was violating Section 547.322(f). Ferguson was driving southbound on a farm-to-market road at approximately 1:30 a.m. when he saw two trucks approaching him in the northbound lane. Ferguson testified at a suppression hearing, "When the first pickup truck went by, I couldn't accurately observe whether or not the license plate light was out because the second pickup truck was illuminating it with its headlights." Ferguson continued,

> The second pickup truck came by, and about the time that it had passed my -- halfway passed my patrol car where I could observe the license plate light, I leaned forward, looked in my side view mirror, and observed that the license plate lights [on the second pickup truck] were defective to the point where I could not recognize the state on the license plate. I then turned my head and observed and did a second look to confirm my initial observation.

Ferguson testified that "[t]he right side license plate light was completely out," that the "left side [license plate light] was dim to the point that it wasn't illuminating the plate," and that he could not see the license plate numbers or the issuing state from approximately fifty feet away. Olguin was driving the second pickup truck.

The State admitted a video recording of Olguin's arrest during the suppression hearing. On appeal, Olguin argues that the recording fails to confirm any defect with the license plate lamp because Ferguson's headlights were shining directly on the reflective license plate. However, the recording does demonstrate that as soon as Ferguson approached Olguin, he

4

notified Olguin that he was being stopped due to a defective license plate lamp. The recording further reflects that after Olguin exited the truck, Ferguson showed him that only the left side of the license plate light was operating.

Olguin argues that the Texas Transportation Code does not require two functioning license plate lamps on passenger vehicles. While true, the Code does require illumination of a passenger vehicle's license plate to such a degree that the plate is "clearly legible at a distance of 50 feet from the rear." TEX. TRANSP. CODE ANN. § 547.322(f).

The evidence from the suppression hearing showed that the passenger-side license plate lamp light was not functioning, that the driver-side license plate lamp light was dim, and that Ferguson could not clearly read the license plate in his side view mirror from a distance of fifty feet. Viewing the evidence in a light most favorable to the trial court's ruling, we find that Ferguson had a reasonable basis for suspecting that Olguin had violated Section 547.322(f) of the Texas Transportation Code. *See id.* We conclude that Ferguson's initial stop of Olguin was based on reasonable suspicion. *See Tex. Dep't of Pub. Safety v. Eller*, No. 06-09-00053-CV, 2009 WL 3617646, at \*2 (Tex. App.—Texarkana Nov. 4, 2009, no pet.) (mem. op., not designated for publication). Therefore, we overrule Olguin's sole point of error.[3]

---

[3]Ferguson testified that he spotted an open Coors Light beer can immediately after asking Olguin for his driver's license. Ferguson also noticed that Olguin's breath smelled of alcohol, his eyes were red and bloodshot, and he staggered as he walked. Olguin was finally arrested following his dismal performance on various field-sobriety tests.

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     January 28, 2014
Date Decided:       February 25, 2014

Do Not Publish

6