**AFFIRM; and Opinion Filed June 3, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00135-CR
### No. 05-14-00136-CR

### RICHARD EARL DRIVER JR., Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 199-80014-2013 & 199-80032-2013**

## MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill[1]
Opinion by Justice Brown

Appellant Richard Earl Driver Jr. appeals his convictions for fraudulent use or possession of identifying information and burglary of a habitation. In three points of error, appellant contends the trial court erred in denying his motion to suppress and contends the evidence was insufficient to prove he committed the offenses. We affirm the trial court's judgments.

### BACKGROUND

In November 2012, a Department of Public Safety trooper pulled appellant over for speeding. The trooper ended up searching appellant's vehicle and finding stolen property in it. As a result, appellant was indicted for possessing the identifying information of Christopher

---

[1] Justice Bill Whitehill succeeded Justice Kerry FitzGerald, a member of the original panel, following Justice FitzGerald's retirement. Justice Whitehill has reviewed the briefs and the record before the Court. *See* TEX. R. APP. P. 41.1(a).

Munson and for burglary of Shannon Carmichael's habitation. Appellant moved to suppress the evidence obtained as a result of the traffic stop. After a jury was selected, appellant waived his right to a jury trial and requested a trial before the court. The trial court heard the motion to suppress along with the trial.

Dakota Roden, fifteen years' old at the time of trial, testified that in November 2012, he lived in Plano with his mother, Shannon Carmichael, his younger brother, and a friend of his mother's. When he got home from school at about 3:30 p.m. on November 12, he noticed that his mother's room was really messy and it had not been that way in the morning. There were clothes everywhere, drawers were open, and the bed was messed up. After going into his mother's bedroom, he realized some items were missing, namely some jewelry and a gun.

Carmichael testified that on November 12, 2012, she was living at 6921 Rochelle Drive in Plano. On that day, she and her boys left at about 8:15 in the morning for school and work. Carmichael's friend who was living with them had already left for school. After Carmichael got a phone call from her son that afternoon, she left work to go home. Carmichael testified the house was a mess and many things were missing, including two laptop computers, jewelry boxes, and her gun. While police were at her home investigating, she got a call from DPS Trooper Kevin Rhodes. Rhodes had pulled someone over and that person had her property.

The next day, Carmichael went to a DPS office to identify some of her property. Carmichael identified State's Exhibits 1 through 11 as photographs of her belongings and her family's belongings. Most of these items were cards, such as health insurance cards, credit cards, and driver's licenses. Some cards were in Carmichael's name, and some were in her son's name or her father's name. Carmichael also identified State's Exhibits 12 through 22 as photographs of more of her belongings, including jewelry, an electronic tablet, and watches. Some gemstones and diamonds had been removed from the jewelry and were in a separate bag.

Her gun was not recovered. Neither were the laptops and other jewelry. Carmichael did not know anyone by the name of Richard Driver and did not give him consent to enter her home. Carmichael estimated the total value of the items stolen to be about $30,000.

Christopher Munson testified that in October 2012, his social security card was missing after a break-in at his house in Richardson. He had kept the card in a dresser drawer in his bedroom. In November 2012, the card was returned to Munson after it was found in a car that had been stopped by law enforcement.

DPS Trooper Kevin Rhodes testified that on the afternoon of November 12, 2012, he was stopped on the right shoulder of an entrance ramp to the George Bush Tollway. He observed appellant's vehicle speeding on the tollway, and his radar clocked appellant at 100 miles per hour. The speed limit on the tollway was 70 mph. Rhodes pulled over appellant's vehicle and also another car that was speeding. The three cars pulled over on the shoulder, with Rhodes's patrol vehicle in the middle, appellant's vehicle behind Rhodes, and the other person in front of Rhodes. Rhodes's in-car video system recorded the stop. The trial court admitted the recordings into evidence as State's Exhibits 35 and 36 and indicated it would not consider any inadmissible evidence contained in them.

Appellant was in his car by himself. Rhodes noticed that he was very fidgety, had exaggerated reflexes, and was very talkative. Rhodes also testified that appellant "moved real fast throughout his vehicle" when asked for his license and insurance information. Rhodes asked appellant to step out of his vehicle. Appellant tried to exit his vehicle without unlocking the door. Appellant slammed his shoulder against the door three times before Rhodes unlocked the door to help him out. Rhodes noticed two pocket knives in appellant's pocket and had appellant hand them over. Rhodes then asked appellant when the last time was he had used any illegal drugs. Appellant indicated it had been two years. Rhodes asked appellant to lift up his glasses.

Rhodes observed appellant's eyes were dilated, which indicated to Rhodes that appellant had been using a stimulant, such as methamphetamine. Rhodes asked to search the vehicle, and appellant asked him why. Rhodes told him that he was a drug recognition expert and that appellant was exhibiting signs he was on some kind of upper, such as meth or cocaine. Appellant did not consent to a search of his car. Rhodes asked again when appellant had last used illegal drugs. Appellant changed his answer and said he had done meth two days ago and had been up for three days. Rhodes asked appellant if he had meth in his car, and appellant said he did not. Then Rhodes asked if appellant had anything illegal in his vehicle, and appellant said he had syringes. Trooper Rhodes told appellant he was going to call a canine unit. Appellant got very agitated and upset.

While they were talking, appellant continually put his hands in his pockets. Rhodes kept telling him not to, and appellant kept doing it. Rhodes asked appellant to remove everything from his pockets to make sure he didn't have anything that could hurt him. When asked by the prosecutor why he had appellant empty his pockets when he was looking for weapons, Rhodes explained that he had once been with another trooper who performed a pat-down search on someone who had open needles in his pocket. Rhodes wasn't wearing gloves and did not want to get poked. At that point, Rhodes still had two people pulled over and no back up officer on the scene. Appellant emptied his pockets onto the hood of the patrol car, and Rhodes saw a blue baggie that appeared to have methamphetamine residue in it. At that point, Rhodes informed appellant he was going to search his car. Appellant told Rhodes that "it was in the center console." Rhodes opened the center console and found meth, a hypodermic syringe with a needle attached, and a glass pipe. Rhodes placed appellant under arrest and put him in the front seat of his patrol car.

Trooper Rhodes searched the rest of appellant's car. The first thing he opened was a backpack on the passenger seat. In it, he found two of Shannon Carmichael's expired driver's licenses and her social security card and credit cards. He also found an expired license belonging to someone else. Rhodes read appellant his *Miranda* rights and asked him where he got those items. Appellant told Rhodes he got the driver's licenses out of a mailbox at an apartment complex. They were sticking out of the mailbox and he grabbed them. Rhodes confronted appellant with the fact that there were multiple expired licenses for the same person. Then appellant said he got the credit cards out of a mailbox, not the licenses. Appellant did not know where the licenses came from. Rhodes asked appellant if he knew Carmichael, and appellant said he did not. Appellant later told Rhodes he got the licenses and credit cards from a guy named Lance who makes that stuff. When asked about his conflicting explanations, appellant said his buddy did not make those cards. Appellant was going to give him the numbers so he could make other cards. Rhodes found other items taken from Carmichael's house spread throughout appellant's vehicle. He also found Munson's social security card.

Trooper John Rios testified that on November 12, 2012, he received a call from Trooper Rhodes asking for assistance. When he arrived at the scene, Rios questioned appellant in Rhodes's car. When Rios asked appellant where he got the items in his car, appellant said he got them from Rick, also referred to as "Biker Rick." Appellant told Rios that Rick was a drifter. Appellant said he met Biker Rick at a motel in Garland. Rick asked appellant for rides, and appellant took Rick places. Appellant did not know what Rick's last name was. Appellant said he bought the stuff in his car from Rick when he bought a controlled substance from him. He paid Rick $200, $50 for the controlled substance and $150 for the stuff. Appellant acknowledged that he knew the stuff was probably stolen. Appellant told Rios he was going to take the stuff to a fence, someone who could make it disappear. Rios agreed with Rhodes that

–5–

appellant appeared to be under the influence that day and that his condition was consistent with someone under the influence of methamphetamine. Appellant was jittery and made a lot of movements.

Plano Police Officer Mike Phillips was assigned to investigate the break-in at Carmichael's house. After talking to Trooper Rhodes, it was Phillips's understanding that appellant had given an explanation for how he came to be in possession of the stolen property. On November 16, 2012, Phillips interviewed appellant in the Dallas County jail. Appellant gave Phillips the name of a Biker Rick, but Phillips wasn't able to develop the person's full name or date of birth.

After reviewing the video recordings of the traffic stop and hearing arguments of counsel, the trial court denied the motion to suppress and found appellant guilty of burglary and fraudulent use or possession of identifying information. At the punishment phase, appellant pleaded true to three prior burglary convictions the State had alleged for purposes of enhancing punishment. The trial court assessed punishment for the burglary at life in prison and for the fraudulent possession or use of identifying information at twenty years' confinement. These appeals followed.

## MOTION TO SUPPRESS

In his first point of error, appellant contends the trial court erred in denying his motion to suppress because Trooper Rhodes's search of his pockets violated his rights under the Fourth Amendment and the Texas Constitution. Specifically, he maintains that Rhodes's instruction for him to empty his pockets exceeded a permissible search for weapons because there was no evidence Rhodes observed any bulge in appellant's pocket indicating a weapon and it was not reasonable for Rhodes to fear a needle being used as a weapon. But for this illegal search, appellant argues, there would have been no search of his car.

We review a trial court's ruling on a motion to suppress under a bifurcated standard. We give almost total deference to the trial court's determination of the historical facts and we review de novo the court's application of the law to the facts. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Under this standard, the trial court is the sole judge of the credibility of the witnesses and their testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

We need not decide whether Trooper Rhodes exceeded the scope of a proper search for weapons on appellant's person. His search of appellant's car, which revealed the stolen cards and property, was justified under the automobile exception to the warrant requirement. Under both the United States and Texas Constitutions, an officer may conduct a warrantless search of a motor vehicle if the vehicle is readily mobile and if the officer has probable cause to believe it contains evidence of a crime. *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009); *Hollis v. State*, 971 S.W.2d 653, 655 (Tex. App.—Dallas 1998, pet. ref'd); *see Taylor v. State*, 20 S.W.3d 51, 56 (Tex. App.—Texarkana 2000, pet. ref'd). No exigent circumstances are required. *Neal v. State*, 256 S.W.3d 264, 283 (Tex. Crim. App. 2008). Probable cause exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. *Id.* at 282. If the automobile exception applies, law enforcement officers may search "every part of the vehicle and its contents that may conceal the object of the search." *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

When Rhodes, trained as a drug recognition expert, came in contact with appellant, it was readily apparent that appellant was under the influence of a stimulant such as methamphetamine. Rhodes testified that appellant was very fidgety, had exaggerated reflexes, and was very talkative. Appellant had trouble exiting his car, and his eyes were dilated, which indicated stimulant use to Rhodes. When Rhodes asked appellant if he had anything illegal in his car,

appellant said he had syringes. At that point, which was before Rhodes asked appellant to empty his pockets, there was a fair probability of finding contraband in appellant's car and thus Rhodes had probable cause to search it. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.125(a) (West 2010) (crime of possession of drug paraphernalia); *Graves v. State*, 307 S.W.3d 483, 490–91 (Tex. App.—Texarkana 2010, pet. ref'd) (after traffic stop, officer made observations that suggested defendant had made alcohol available to minors, and warrantless search of car was justified). Under the automobile exception, Trooper Rhodes's search of appellant's car without a warrant was proper. Although the State did not rely on the automobile exception in the trial court, we should consider any legal theory upon which the trial court's ruling may be upheld, regardless of whether that argument was made at trial, when, as here, the prevailing party in the underlying motion to suppress asserts that argument on appeal. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *Turrubiate v. State*, 415 S.W.3d 433, 439 (Tex. App.—San Antonio 2013, pet. ref'd). We conclude the trial court did not err in denying appellant's motion to suppress. We overrule appellant's first point of error.

## SUFFICIENCY OF THE EVIDENCE

In his second and third points of error, appellant challenges the sufficiency of the evidence to support his convictions. In his second point of error, he asserts the trial court erred in finding the State showed that his explanation for the stolen property was unreasonable. In his third point, he contends the evidence was insufficient to prove beyond a reasonable doubt every element of the charged crimes.

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, the factfinder was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Jackson v.*

*Virginia*, 443 U.S. 307, 318–19 (1979). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Further, the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Temple*, 390 S.W.3d at 360.

### *Burglary Conviction*

The elements of burglary, as alleged in the indictment, were that appellant, without the effective consent of the owner Shannon Carmichael, entered a habitation and committed and attempted to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). A defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary. *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Chavez v. State*, 843 S.W.2d 586, 589 (Tex. Crim. App. 1992). To warrant an inference of guilt from possession of stolen property alone, the possession must be personal, recent, unexplained, and involve a distinct and conscious assertion of the right to the property by the defendant. *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984). If the defendant offers an explanation for his possession of the property, the record must show the explanation is either false or unreasonable. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a defendant's explanation for possession of the property is true or reasonable is a question of fact. *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.).

Appellant contends the evidence is insufficient to prove he committed burglary because there is no evidence to connect him to the break-in at Carmichael's house and the State did not show his explanation that he got the stolen items from Biker Rick to be unreasonable. Appellant overlooks the fact that his explanation involving Biker Rick was not the first explanation he

gave. When Trooper Rhodes first asked appellant about the stolen cards, appellant explained that they were sticking out of a mailbox at an apartment complex and he grabbed them. Then when the trooper questioned why expired driver's licenses would be in the mail, appellant said he was only talking about the credit cards. Next appellant said he got the driver's licenses and credit cards from a guy who "makes that stuff." Then when questioned about the differences in his explanations, appellant explained that his friend did not make those cards. Appellant was going to supply him with the card numbers so he could make other cards. Appellant next explained he bought the stolen property from Biker Rick.

The State refuted appellant's explanation involving Biker Rick by showing that appellant gave other explanations for his possession of the property when he was first called upon to do so. The trial court implicitly found that appellant's explanations for his possession of the property were unreasonable and the record supports that finding. We conclude the evidence is sufficient to prove beyond a reasonable doubt that appellant committed burglary.

### *Fraudulent Use or Possession of Identifying Information*

Appellant's entire complaint in his third point of error about the sufficiency of the evidence to support his conviction for fraudulent use or possession of identifying information is found in one sentence in his brief: "Also, a rational trier of fact could not have found the essential elements beyond a reasonable doubt that Appellant committed the offense of fraudulent use/possession of identifying information beyond a reasonable doubt with the evidence legally before the court." Appellant has not adequately briefed this issue. He has not presented any argument for his contention the evidence is insufficient nor has he cited to any authorities or to the record. *See* TEX. R. APP. P. 38.1(i). We will not speculate as to why appellant thinks the evidence is insufficient. We have reviewed the evidence in the light most favorable to the conviction and conclude the evidence is sufficient to support the conviction. *See* TEX. PENAL

–10–

CODE ANN. § 32.51(b) (West Supp. 2014).  We overrule appellant's second and third points of error.

We affirm the trial court's judgments.


/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140135F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICHARD EARL DRIVER JR., Appellant

No. 05-14-00135-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-80014-2013.
Opinion delivered by Justice Brown. Justices
Lang and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 3rd day of June, 2015.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

RICHARD EARL DRIVER JR., Appellant

No. 05-14-00136-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas

Trial Court Cause No. 199-80032-2013.

Opinion delivered by Justice Brown. Justices Lang and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of June, 2015.