

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00220-CR

_____

PERRY JUDKINS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. 44918

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Responding to a report of a fight in progress at the Ladonia Housing Authority apartments (LHA) in Ladonia, Texas, officers of the Fannin County Sheriff's Office, Texas Department of Public Safety (DPS), and the Fannin County Special React Team (SWAT team), encountered about seventy people "[a]mongst the housing authority and on the grounds." The officers secured the entire area and, based upon statements that "they [had] a knife or something to that effect," the officers "[were] positioned to start conducting searches."[1] Trooper Kevin Sanman of the DPS detained and patted down three or four people, including Perry Judkins, Jr., who were standing in a "little group" beside one of the apartments. When searching Judkins, Sanman felt something he thought could be contraband, and he testified that Judkins gave him permission to search. Sanman discovered a baggie of marihuana in Judkins' pocket and arrested him.

Judkins was charged with possession of marihuana in an amount less than two ounces. The trial court denied Judkins' motion to suppress the drugs. Judkins later pled guilty and was sentenced to deferred adjudication community supervision for nine months.[2]

On appeal, Judkins argues that the trial court should have suppressed the drugs because: (1) the officers did not have reasonable suspicion to detain and frisk him; and (2) the officers lacked probable cause, or consent, to search him.

---

[1]The females were not searched.

[2]Judkins was also fined $350.00, ordered to pay restitution of $140.00 and ordered to pay court costs.

2

We reverse the judgment of the trial court because the officer lacked reasonable suspicion to detain Judkins.

## I.   Factual and Procedural Background

On or about March 20, 2010, in the late night or early morning hours, Mr. Brown, a resident at the LHA, called 9-1-1 and reported that a fight, involving a large group of people and possibly a knife, was occurring on the LHA grounds.  Brown said that he heard "whooping and hollering, fights going on" and that "he [had overheard] people saying that -- they made the statement that they have a knife or something to that effect."

When the police arrived at the LHA, they saw several groups of people, totaling about seventy people in all.  Fearing the situation could get out of control, Sergeant Leonard Baxter called for assistance because there were only seven officers there at the time, and the LHA was a high crime area where fights had occurred in the past.  The SWAT team, and Trooper Sanman responded to the call for assistance.

When Sanman arrived on the scene, "[p]eople [were] running all over the place."  A few minutes later, one of the police officers already on the scene told him to watch and detain a small group of four men, one of whom was Judkins, who were standing beside one of the LHA apartments.  Sanman detained the four men and got identification from them.  He testified that he patted down Judkins out of fear for his safety, as the officers were dealing with a large group of people in a high crime area, responding to reports of a large fight and a possible weapon.

3

When Sanman patted down Judkins, he felt something in his pocket that felt like it could be contraband. Sanman said he asked for and received Judkins' permission to search the inside of his pocket. Judkins denied giving Sanman permission to search him.

## II. Standard of Review

We review the trial court's decision to deny Judkins' motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd).

Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *State v. Ross*, 32 S.W.3d 853, 856–57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also afford such deference to a trial court's ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche*, 10 S.W.3d at 332; *Guzman*, 955 S.W.2d at 89; *Graves*, 307 S.W.3d at 489. Since all

4

evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of Judkins' motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *Carmouche*, 10 S.W.3d at 328; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

### III. Reasonable Suspicion to Detain

In his first point of error, Judkins contends that the trial court should have suppressed the evidence because the officers lacked reasonable suspicion to detain and frisk him.

The State does not argue that Judkins was not detained.[3] Further, the State stipulated that Judkins was searched and arrested without a warrant. An officer's warrantless search of a person or person's property is presumed to be an unreasonable search under the Fourth Amendment unless an exception excuses the officer's conduct. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993); *Brimage v. State*, 918 S.W.2d 466, 500 (Tex. Crim. App. 1994) (plurality op.) (op. on reh'g); *Kelly v. State*, 669 S.W.2d 720, 725 (Tex. Crim. App. 1984); *Hitchcock v. State*, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref'd).

An officer may briefly stop a suspicious individual in order to determine his or her identity or to maintain the status quo momentarily while obtaining more information. *Adams v. Williams*, 407 U.S. 143, 147 (1972); *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Gurrola v. State*, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994). In *Terry*, the United States Supreme Court established a

---

[3]Sanman commanded Judkins and the others with him to "turn around and place their hands on the wall and don't move." He then gathered identification and continued to detain the group. They remained in the same position during the detention, which lasted approximately ten to fifteen minutes.

two-pronged test for such investigative detentions. *Terry*, 392 U.S. at 19–20. To determine the reasonableness of an investigative detention, the court must inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first prong, a police officer may lawfully conduct a temporary detention if there is reasonable suspicion to believe that the detained person is violating the law. *Terry*, 392 U.S. at 21; *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead the officer to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); *Doyle v. State*, 265 S.W.3d 28, 31 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (citing *Terry*, 392 U.S. at 30). While the State "need not establish with absolute certainty that a crime has occurred in order to show reasonable suspicion," these facts must be more than a mere hunch or suspicion. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Davis*, 947 S.W.2d at 244. The determination of reasonable suspicion is factual and must be examined in terms of the totality of the circumstances at the time of the stop. *Curtis v. State*, 238 S.W.3d 376, 380 (Tex. Crim. App. 2007); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

The State's contention, urged at the suppression hearing and on appeal, is that Judkins was detained because he was present in a high crime area where a 9-1-1 caller reported seeing a large fight, possibly involving a weapon, and there were a limited number of officers available to secure the scene.

In this case, Brown's 9-1-1 call was reasonably reliable because he was present at the LHA and he identified himself, placing himself in a position to be easily found, identified, and held responsible for the information he provided. *Hawes v. State*, 125 S.W.3d 535, 540 (Tex. App.—Houston [1st Dist.] 2002, no pet.). However, Brown did not report personally seeing the fight or a weapon, and all he could articulate was that he suspected there might be a fight and that he overheard "a statement that there was a knife." Brown did not describe any particular suspect that was involved in the fight.

Judkins testified that on the night in question, he was at the LHA attending a big party for his sister's birthday and that there "was some females fighting" at the party. No evidence suggested that Judkins engaged in any behavior that raised any suspicion of his involvement with criminal activity. There is no evidence that Judkins was involved in the fight, that he possessed a weapon at any time, or that any weapon was found. Likewise, there is no evidence that Judkins exhibited nervous, suspicious, or evasive behavior, such as furtive gestures or unprovoked flight upon noticing the arrival of police. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Judkins' "presence in an area of expected criminal activity, standing alone, is not enough to support a

7

reasonable, particularized suspicion" that he was associated with criminal activity.[4] *Wardlow*, 528 U.S. at 124. By the time of the pat-down, certainly, there had been a detention, but when considering the totality of the circumstances, there had been identified no articulable fact supporting any reasonable suspicion that Judkins or his immediate group was engaged in any criminal activity. Accordingly, we sustain Judkins' first point of error and find the trial court abused its discretion in denying the motion to suppress. Since we have decided that no reasonable suspicion existed to detain Judkins and no other justification for thereafter searching him having been alleged, the search was improper and the fruits thereof should have been suppressed. Since the basis for the conviction was the marihuana found as a result of the improper search of Judkins, the error was harmful.

We reverse the judgment and remand to the trial court for further proceedings.

Jack Carter
Justice

Date Submitted:     April 13, 2011
Date Decided:       April 19, 2011

Do Not Publish

---

[4]Sanman did not respond positively when he was asked if Judkins "took off running."