In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00220-CR

                                                ______________________________

 

 

                                      PERRY JUDKINS,
JR., Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                             Fannin County, Texas

                                                            Trial
Court No. 44918

 

                                                                   
                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Responding
to a report of a fight in progress at the Ladonia Housing Authority apartments
(LHA) in Ladonia, Texas, officers of the Fannin County Sheriff’s Office, Texas
Department of Public Safety (DPS), and the Fannin County Special React Team (SWAT
team), encountered about seventy people “[a]mongst the housing authority and on
the grounds.”  The officers secured the
entire area and, based upon statements that “they [had] a knife or something to
that effect,” the officers “[were] positioned to start conducting searches.”[1]  Trooper Kevin Sanman of the DPS detained and
patted down three or four people, including Perry Judkins, Jr., who were
standing in a “little group” beside one of the apartments.  When searching Judkins, Sanman felt something
he thought could be contraband, and he testified that Judkins gave him
permission to search.  Sanman discovered
a baggie of marihuana in Judkins’ pocket and arrested him.  

            Judkins
was charged with possession of marihuana in an amount less than two
ounces.  The trial court denied Judkins’
motion to suppress the drugs.  Judkins
later pled guilty and was sentenced to deferred adjudication community
supervision for nine months.[2]  

            On
appeal, Judkins argues that the trial court should have suppressed the drugs
because:  (1) the officers did not
have reasonable suspicion to detain and frisk him; and (2) the officers lacked
probable cause, or consent, to search him. 


            We
reverse the judgment of the trial court because the officer lacked reasonable
suspicion to detain Judkins.

I.          Factual and Procedural
Background

            On
or about March 20, 2010, in the late night or early morning hours, Mr. Brown, a
resident at the LHA, called 9-1-1 and reported that a fight, involving a large
group of people and possibly a knife, was occurring on the LHA grounds.  Brown said that he heard “whooping and
hollering, fights going on” and that “he [had overheard] people saying that --
they made the statement that they have a knife or something to that effect.”  

            When
the police arrived at the LHA, they saw several groups of people, totaling
about seventy people in all.  Fearing the
situation could get out of control, Sergeant Leonard Baxter called for
assistance because there were only seven officers there at the time, and the
LHA was a high crime area where fights had occurred in the past.  The SWAT team, and Trooper Sanman responded
to the call for assistance. 

            When
Sanman arrived on the scene, “[p]eople [were] running all over the place.”  A few minutes later, one of the police
officers already on the scene told him to watch and detain a small group of
four men, one of whom was Judkins, who were standing beside one of the LHA
apartments.  Sanman detained the four men
and got identification from them.  He
testified that he patted down Judkins out of fear for his safety, as the
officers were dealing with a large group of people in a high crime area,
responding to reports of a large fight and a possible weapon.  

            When
Sanman patted down Judkins, he felt something in his pocket that felt like it
could be contraband.  Sanman said he
asked for and received Judkins’ permission to search the inside of his
pocket.  Judkins denied giving Sanman
permission to search him.  

II.        Standard of Review

            We
review the trial court’s decision to deny Judkins’ motion to suppress evidence
by applying a bifurcated standard of review. 
Graves v. State, 307 S.W.3d
483, 489 (Tex. App.—Texarkana 2010, pet. ref’d); Rogers v. State, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009,
pet. ref’d).

            Because
the trial court is the exclusive trier of fact and judge of witness credibility
at a suppression hearing, we afford almost total deference to its determination
of facts supported by the record.  State v. Ross, 32 S.W.3d 853, 856–57
(Tex. Crim. App. 2000); Carmouche v.
State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We also afford such deference to a trial
court’s ruling on application of law to fact questions, also known as mixed
questions of law and fact, if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996).

            While
we defer to the trial court on its determination of historical facts and
credibility, we review de novo its application of the law and determination on questions
not turning on credibility.  Carmouche, 10 S.W.3d at 332; Guzman, 955 S.W.2d at 89; Graves, 307 S.W.3d at 489.  Since all evidence is viewed in the light
most favorable to the trial court’s ruling, we are obligated to uphold the
denial of Judkins’ motion to suppress if it was supported by the record and was
correct under any theory of law applicable to the case.  Carmouche,
10 S.W.3d at 328; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

III.       Reasonable Suspicion to
Detain

            In
his first point of error, Judkins contends that the trial court should have
suppressed the evidence because the officers lacked reasonable suspicion to
detain and frisk him. 

            The
State does not argue that Judkins was not detained.[3]  Further, the State stipulated that Judkins was
searched and arrested without a warrant. 
An officer’s warrantless search of a person or person’s property is
presumed to be an unreasonable search under the Fourth Amendment unless an
exception excuses the officer’s conduct.  Minnesota
v. Dickerson, 508 U.S. 366, 372 (1993); Brimage
v. State, 918 S.W.2d 466, 500 (Tex. Crim. App. 1994) (plurality op.) (op.
on reh’g); Kelly v. State, 669 S.W.2d
720, 725 (Tex. Crim. App. 1984); Hitchcock
v. State, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref’d).  

            An
officer may briefly stop a suspicious individual in order to determine his or
her identity or to maintain the status quo momentarily while obtaining more
information.  Adams v. Williams, 407 U.S. 143, 147 (1972); Terry v. Ohio, 392 U.S. 1, 21 (1968); Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994).  In Terry,
the United States Supreme Court established a two-pronged test for such
investigative detentions.  Terry, 392 U.S. at 19–20.  To determine the reasonableness of an investigative
detention, the court must inquire:  “(1)
whether the officer’s action was justified at its inception; and, (2) whether
it was reasonably related in scope to the circumstances which justified the
interference in the first place.”  Davis v. State, 947 S.W.2d 240, 242
(Tex. Crim. App. 1997).

            Under
the first prong, a police officer may lawfully conduct a temporary detention if
there is reasonable suspicion to believe that the detained person is violating
the law.  Terry, 392 U.S. at 21; Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Reasonable suspicion exists if the officer
has specific, articulable facts that when combined with rational inferences
from those facts, would lead the officer to reasonably suspect that a
particular person has, or soon will be, engaged in criminal activity.  Brother
v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); Doyle v. State, 265 S.W.3d 28, 31 (Tex. App.—Houston [1st Dist.]
2008, pet. ref’d) (citing Terry, 392
U.S. at 30).  While the State “need not
establish with absolute certainty that a crime has occurred in order to show
reasonable suspicion,” these facts must be more than a mere hunch or
suspicion.  Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); Davis, 947 S.W.2d at 244.  The determination of reasonable suspicion is
factual and must be examined in terms of the totality of the circumstances at
the time of the stop.  Curtis v. State, 238 S.W.3d 376, 380
(Tex. Crim. App. 2007); Woods v. State,
956 S.W.2d 33, 38 (Tex. Crim. App. 1997). 


            The
State’s contention, urged at the suppression hearing and on appeal, is that
Judkins was detained because he was present in a high crime area where a 9-1-1
caller reported seeing a large fight, possibly involving a weapon, and there
were a limited number of officers available to secure the scene.  

            In
this case, Brown’s 9-1-1 call was reasonably reliable because he was present at
the LHA and he identified himself, placing himself in a position to be easily
found, identified, and held responsible for the information he provided.  Hawes
v. State, 125 S.W.3d 535, 540 (Tex. App.—Houston [1st Dist.] 2002, no
pet.).  However, Brown did not report
personally seeing the fight or a weapon, and all he could articulate was that
he suspected there might be a fight and that he overheard “a statement that
there was a knife.”  Brown did not
describe any particular suspect that was involved in the fight.  

            Judkins
testified that on the night in question, he was at the LHA attending a big
party for his sister’s birthday and that there “was some females fighting” at
the party.  No evidence suggested that
Judkins engaged in any behavior that raised any suspicion of his involvement
with criminal activity.  There is no
evidence that Judkins was involved in the fight, that he possessed a weapon at
any time, or that any weapon was found. 
Likewise, there is no evidence that Judkins exhibited nervous,
suspicious, or evasive behavior, such as furtive gestures or unprovoked flight
upon noticing the arrival of police.  Illinois v. Wardlow, 528 U.S. 119, 124
(2000).  Judkins’ “presence in an area of
expected criminal activity, standing alone, is not enough to support a
reasonable, particularized suspicion” that he was associated with criminal
activity.[4]  Wardlow,
528 U.S. at 124.  By the time of the
pat-down, certainly, there had been a detention, but when considering the
totality of the circumstances, there had been identified no articulable fact
supporting any reasonable suspicion that Judkins or his immediate group was
engaged in any criminal activity. 
Accordingly, we sustain Judkins’ first point of error and find the trial
court abused its discretion in denying the motion to suppress.  Since we have decided that no reasonable
suspicion existed to detain Judkins and no other justification for thereafter
searching him having been alleged, the search was improper and the fruits
thereof should have been suppressed. 
Since the basis for the conviction was the marihuana found as a result
of the improper search of Judkins, the error was harmful.  

            We
reverse the judgment and remand to the trial court for further proceedings. 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          April
13, 2011

Date Decided:             April
19, 2011

 

Do Not Publish 











[1]The
females were not searched. 

 





[2]Judkins
was also fined $350.00, ordered to pay restitution of $140.00 and ordered to
pay court costs.  





[3]Sanman
commanded Judkins and the others with him to “turn around and place their hands
on the wall and don’t move.”  He then
gathered identification and continued to detain the group.  They remained in the same position during the
detention, which lasted approximately ten to fifteen minutes.  





[4]Sanman
did not respond positively when he was asked if Judkins “took off running.”