

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00053-CR

_____

TED PATRICK CAMMACK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 15,013

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Ted Patrick Cammack was convicted by a jury of possessing methamphetamine with intent to deliver in an amount of four grams or more but less than 200 grams. Cammack appeals this conviction and sentence of thirty years' imprisonment, arguing that the trial court erred in failing to suppress the evidence obtained from an allegedly illegal traffic stop and that the evidence is legally insufficient to support his conviction. Because (1) the trial court could have believed the officer's testimony over Cammack's and (2) sufficient evidence supported Cammack's conviction, we affirm the trial court's judgment.

*(1)* *The Trial Court Could Have Believed the Officer's Testimony over Cammack's*

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Since all the

evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of Cammack's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *Carmouche*, 10 S.W.3d at 327–28; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Cammack's motion to suppress challenged only the legality of the traffic stop.

An officer conducts a lawful stop when he or she has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead to the reasonable conclusion that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id.*; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492. "If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Graves*, 307 S.W.3d at 489; *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005).

The Texas Transportation Code provides "[a]n operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position." TEX. TRANSP. CODE ANN. § 545.104(a) (West 2011). The signal shall be used "continuously for

3

not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011).

At the suppression hearing, Deputy David Thompson testified that he "was traveling northbound on State Highway 271 at the intersection of Red Hen Road" in the afternoon when he passed Cammack's vehicle as it was "approaching the intersection." Even though the vehicle was "approximately 75 feet from the intersection," Cammack failed to signal before the turn. Thompson testified, "[W]henever I passed him—passed the Red Hen Road I watched the vehicle through my mirrors and when Mr. Cammack turned left on to 271 I noticed that he did not even turn on his blinker at all. That's when I made a U-turn and went back."

Cammack argues that it would be improbable for Thompson, who was driving approximately fifty-five miles per hour, to have had sufficient time to observe whether Cammack used his turn signal. Thompson admitted that he would only have one second within which to make the observation while passing Red Hen Road.[1] Thompson reiterated, however, that, as he passed the intersection, he was able to observe that "[t]he blinker was not on." In opposition, Cammack offered his own testimony swearing that he properly employed a turn signal.

As the finder of fact, the trial court was free to disregard Cammack's testimony as self-serving in favor of Thompson's testimony that he observed a failure to employ a turn signal in

---

[1]Thompson also agreed that he could not "have seen the blinkers on the driver's side of [Cammack's] vehicle if he was turning left" and that he "wouldn't know if the blinkers were engaged when he was at the stop sign." Thompson later stated that, "whenever I approached the intersection and Mr. Cammack was coming up I slowed down at that time. So whenever he come across and turned left that's when I noticed on the back of his vehicle that the turn signal was not working."

violation of Section 545.104 of the Texas Transportation Code. Favoring Thompson's testimony, the trial court could have concluded that Thompson had a reasonable basis for suspecting that Cammack committed a traffic offense. Therefore, the court could have properly found that the traffic stop was legal. *See Zervos*, 15 S.W.3d at 151.

We overrule this point of error.

*(2)    Sufficient Evidence Supported Cammack's Conviction*

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of possession of four or more but less than 200 grams of methamphetamine with intent to deliver beyond a reasonable doubt.[2] *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We are to rigorously review legal sufficiency focusing on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

---

[2]Cammack does not challenge that the amount of methamphetamine was four or more but less than 200 grams.

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Cammack was in possession of methamphetamine with intent to deliver as charged in the indictment if he: (1) knowingly (2) possessed, (3) with intent to deliver, (4) four grams or more but less than 200 grams (5) of methamphetamine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). "To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband."[3] *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West 2010). Cammack challenges only the element of knowing possession.

Mere presence at a location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). When the accused is "not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). The links rule "is designed to protect the innocent bystander

---

[3]Possession is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2011).

6

from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish Cammack's possession of contraband include: (1) Cammack's presence when a search is conducted, (2) whether the contraband was in plain view, (3) Cammack's proximity to and the accessibility of the narcotics, (4) whether he was under the influence of narcotics when arrested, (5) whether he possessed other contraband or narcotics when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether Cammack owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether Cammack was found with a large amount of cash, (14) whether his conduct indicated a consciousness of guilt, (15) whether he made incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, and (17) whether Cammack was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd); *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.); *see Jones*, 963 S.W.2d at 830. The number

7

of links is not dispositive; rather, we look to the "logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

At trial, Thompson identified Red Hen Road as a "hot bed" for drug activity in the county, suggesting that Cammack was found in a suspicious area. Thompson testified that Cammack was the only person in the vehicle and described Cammack's demeanor as nervous. Before giving consent to search the vehicle,[4] Cammack "advised me that he didn't want me to search his vehicle due to that he might have had a friend earlier that was a diabetic might have left a needle." On obtaining consent, Thompson located a needle concealed inside of a magnet "mounted on to the center console by the driver's feet." The center console contained digital scales dusted with "white crystal residue," another needle, and a "plastic baggy that was filled with methamphetamine" with a "street value" of $800.00. Although Thompson testified he had to obtain a screwdriver to "open the side of that console," the fact-finder could have determined that Cammack was in close proximity and had access to the drugs. Thompson believed that Cammack's knowledge of the concealed needles demonstrated that he knew methamphetamine was also present in the console. Thus, factors 1, 3, 10, 11, 12, 14, 15, 16, and 17 of the links test were met.

To rebut these factors, Cammack points to factors 2, 4, 5, 6, 7, 8, 9, and 13. Specifically, the contraband was not in plain view; he was not under the influence of drugs when arrested; did

---

[4]Cammack was driving a borrowed vehicle, which indicated he had a right to temporarily possess the vehicle where the cocaine was found. *See Menchaca v. State*, 901 S.W.2d 640, 652 (Tex. App.—El Paso 1995, pet. ref'd) (holding appellant's control over borrowed vehicle raised inference he knew of drugs in vehicle).

8

not possess other narcotics; did not make incriminating statements, furtive gestures, or attempt to flee; there was no odor of contraband; and he did not have a large sum of money.

It was within the purview of the jury to weigh credibility and conflicts in the evidence referenced above. Viewing the evidence and outcome of the links analysis in the light most favorable to the verdict, we hold that the jury could, beyond a reasonable doubt, rationally find Cammack's knowing possession of the methamphetamine. Therefore, the evidence was legally sufficient.

We overrule this point of error.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     November 14, 2011
Date Decided:       December 14, 2011

Do Not Publish

9