In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00053-CR

                                                ______________________________

 

 

                                 TED PATRICK CAMMACK,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 115th
Judicial District Court

                                                            Upshur County, Texas

                                                            Trial
Court No. 15,013

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Ted Patrick
Cammack was convicted by a jury of possessing methamphetamine with intent to
deliver in an amount of four grams or more but less than 200 grams.  Cammack appeals this conviction and sentence
of thirty years’ imprisonment, arguing that the trial court erred in failing to
suppress the evidence obtained from an allegedly illegal traffic stop and that
the evidence is legally insufficient to support his conviction.  Because (1) the trial court could have
believed the officer’s testimony over Cammack’s and (2) sufficient evidence supported
Cammack’s conviction, we affirm the trial court’s judgment.

(1)        The Trial Court Could Have Believed the
Officer’s Testimony over Cammack’s

 

            We review a
trial court’s decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Graves v. State, 307 S.W.3d 483, 489 (Tex.
App.—Texarkana 2010, pet. ref’d); Rogers
v. State, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref’d). While
we defer to the trial court on its determination of historical facts and
credibility, we review de novo its application of the law and determination on
questions not turning on credibility. Carmouche
v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996); Graves, 307
S.W.3d at 489.  We also afford deference
to a trial court’s “application of law to fact questions,” also known as “mixed
questions of law and fact,” if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Guzman, 955 S.W.2d at 89.  Since all the evidence is viewed in the light
most favorable to the trial court’s ruling, we are obligated to uphold the
denial of Cammack’s motion to suppress if it was supported by the record and
was correct under any theory of law applicable to the case.  Carmouche,
10 S.W.3d at 327–28; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Cammack’s motion to suppress challenged only the legality of the traffic
stop. 

            An officer
conducts a lawful stop when he or she has reasonable suspicion to believe that
an individual is violating the law.  Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005). Reasonable suspicion exists if the officer has specific,
articulable facts that, when combined with rational inferences from those
facts, would lead to the reasonable conclusion that a particular person
actually is, has been, or soon will be engaged in criminal activity.  Id.;
Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001).  This is an
objective standard that disregards any subjective intent of the officer making
the stop and looks solely to whether an objective basis for the stop exists.  Ford,
158 S.W.3d at 492.  “If an officer has a
reasonable basis for suspecting that a person has committed a traffic offense,
the officer may legally initiate a traffic stop.”  Graves,
307 S.W.3d at 489; Zervos v. State,
15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref’d); see Tex. Code Crim. Proc.
Ann. art. 14.01(b) (West 2005).

            The Texas
Transportation Code provides “[a]n operator shall use the signal authorized by
Section 545.106 to indicate an intention to turn, change lanes, or start from a
parked position.” Tex. Transp. Code Ann.
§ 545.104(a) (West 2011).  The signal
shall be used “continuously for not less than the last 100 feet of movement of
the vehicle before the turn.”  Tex. Transp. Code Ann. § 545.104(b)
(West 2011).

            At the
suppression hearing, Deputy David Thompson testified that he “was traveling
northbound on State Highway 271 at the intersection of Red Hen Road” in the
afternoon when he passed Cammack’s vehicle as it was “approaching the
intersection.”  Even though the vehicle
was “approximately 75 feet from the intersection,” Cammack failed to signal
before the turn.  Thompson testified, “[W]henever
I passed him—passed the Red Hen Road I watched the vehicle through my mirrors
and when Mr. Cammack turned left on to 271 I noticed that he did not even turn
on his blinker at all.  That’s when I
made a U-turn and went back.”  

            Cammack
argues that it would be improbable for Thompson, who was driving approximately
fifty-five miles per hour, to have had sufficient time to observe whether
Cammack used his turn signal.  Thompson
admitted that he would only have one second within which to make the
observation while passing Red Hen Road.[1]  Thompson reiterated, however, that, as he
passed the intersection, he was able to observe that “[t]he blinker was not
on.”  In opposition, Cammack offered his
own testimony swearing that he properly employed a turn signal.  

            As the
finder of fact, the trial court was free to disregard Cammack’s testimony as
self-serving in favor of Thompson’s testimony that he observed a failure to
employ a turn signal in violation of Section 545.104 of the Texas
Transportation Code.  Favoring Thompson’s
testimony, the trial court could have concluded that Thompson had a reasonable
basis for suspecting that Cammack committed a traffic offense.  Therefore, the court could have properly
found that the traffic stop was legal.  See Zervos, 15 S.W.3d at 151.

            We overrule
this point of error.

 

(2)        Sufficient Evidence Supported Cammack’s
Conviction 

 

            In
evaluating legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the jury’s verdict to determine whether any rational
jury could have found the essential elements of possession of four or more but
less than 200 grams of methamphetamine with intent to deliver beyond a
reasonable doubt.[2]
 Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319
(1979)); Hartsfield v. State, 305
S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref’d) (citing Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007)).  We are to rigorously
review legal sufficiency focusing on the quality of the evidence
presented.  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury “to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Cammack was in possession of methamphetamine
with intent to deliver as charged in the indictment if he:   (1) knowingly (2) possessed, (3) with intent
to deliver, (4) four grams or more but less than 200 grams (5) of
methamphetamine.  Tex. Health & Safety Code Ann. § 481.112(a), (d) (West
2010).  “To prove unlawful possession of
a controlled substance, the State must prove that:   (1) the accused exercised control,
management, or care over the substance; and (2) the accused knew the matter
possessed was contraband.”[3]  Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); Tex. Health & Safety Code Ann. §
481.115(a), (d) (West 2010).  Cammack
challenges only the element of knowing possession.

            Mere
presence at a location where drugs are found is insufficient, by itself, to
establish actual care, custody, or control of those drugs.  Evans v.
State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).  When the accused is “not in exclusive
possession of the place where the substance is found, it cannot be concluded
that the accused had knowledge of and control over the contraband unless there
are additional independent facts and circumstances which affirmatively link the
accused to the contraband.”  Poindexter, 153 S.W.3d at 406 (quoting Deshong v. State, 625 S.W.2d 327, 329
(Tex. Crim. App. 1981)); Jones v. State,
963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref’d).  The links rule “is designed to protect the
innocent bystander from conviction based solely upon his fortuitous proximity
to someone else’s drugs.”  Poindexter, 153 S.W.3d at 406.

            A
nonexclusive list of factors that can be sufficient, either singly or in
combination, to establish Cammack’s possession of contraband include:   (1) Cammack’s presence when a search is
conducted, (2) whether the contraband was in plain view, (3) Cammack’s
proximity to and the accessibility of the narcotics, (4) whether he was under
the influence of narcotics when arrested, (5) whether he possessed other
contraband or narcotics when arrested, (6) whether he made incriminating
statements when arrested, (7) whether he attempted to flee, (8) whether he made
furtive gestures, (9) whether there was an odor of contraband, (10) whether
other contraband or drug paraphernalia were present, (11) whether Cammack owned
or had the right to possess the place where the drugs were found, (12) whether
the place where the drugs were found was enclosed, (13) whether Cammack was
found with a large amount of cash, (14) whether his conduct indicated a
consciousness of guilt, (15) whether he made incriminating statements
connecting himself to the contraband, (16) the quantity of the contraband, and
(17) whether Cammack was observed in a suspicious area under suspicious
circumstances.  Evans, 202 S.W.3d at 162 n.12; Hargrove
v. State, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref’d); Muckleroy v. State, 206 S.W.3d 746, 748
n.4 (Tex. App.—Texarkana 2006, pet. ref’d); Olivarez
v. State, 171 S.W.3d 283, 291 (Tex. App.—Houston [1st Dist.] 2005, no
pet.); Kyte v. State, 944 S.W.2d 29,
31 (Tex. App.—Texarkana 1997, no pet.); see
Jones, 963 S.W.2d at 830.  The number of links is not dispositive;
rather, we look to the “logical force of all of the evidence, direct and
circumstantial.”  Evans, 202 S.W.3d at 162.

            At
trial, Thompson identified Red Hen Road as a “hot bed” for drug activity in the
county, suggesting that Cammack was found in a suspicious area.  Thompson testified that Cammack was the only
person in the vehicle and described Cammack’s demeanor as nervous.  Before giving consent to search the vehicle,[4]
Cammack “advised me that he didn’t want me to search his vehicle due to that he
might have had a friend earlier that was a diabetic might have left a
needle.”  On obtaining consent, Thompson
located a needle concealed inside of a magnet “mounted on to the center console
by the driver’s feet.”  The center
console contained digital scales dusted with “white crystal residue,” another
needle, and a “plastic baggy that was filled with methamphetamine” with a
“street value” of $800.00.  Although
Thompson testified he had to obtain a screwdriver to “open the side of that
console,” the fact-finder could have determined that Cammack was in close
proximity and had access to the drugs.  Thompson
believed that Cammack’s knowledge of the concealed needles demonstrated that he
knew methamphetamine was also present in the console.  Thus, factors 1, 3, 10, 11, 12, 14, 15, 16,
and 17 of the links test were met.

            To rebut
these factors, Cammack points to factors 2, 4, 5, 6, 7, 8, 9, and 13.  Specifically, the contraband was not in plain
view; he was not under the influence of drugs when arrested; did not possess
other narcotics; did not make incriminating statements, furtive gestures, or
attempt to flee; there was no odor of contraband; and he did not have a large
sum of money.  

            It was
within the purview of the jury to weigh credibility and conflicts in the
evidence referenced above.  Viewing the
evidence and outcome of the links analysis in the light most favorable to the
verdict, we hold that the jury could, beyond a reasonable doubt, rationally
find Cammack’s knowing possession of the methamphetamine.  Therefore, the evidence was legally
sufficient.

            We overrule
this point of error.

 

            We affirm the trial court’s
judgment. 

 

            

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          November
14, 2011

Date Decided:             December
14, 2011

 

Do Not Publish

 

 

 











[1]Thompson
also agreed that he could not “have seen the blinkers on the driver’s side of [Cammack’s]
vehicle if he was turning left” and that he “wouldn’t know if the blinkers were
engaged when he was at the stop sign.” 
Thompson later stated that, “whenever I approached the intersection and
Mr. Cammack was coming up I slowed down at that time.  So whenever he come across and turned left
that’s when I noticed on the back of his vehicle that the turn signal was not
working.” 





[2]Cammack
does not challenge that the amount of methamphetamine was four or more but less
than 200 grams.

 





[3]Possession
is defined as “actual care, custody, control, or management.”  Tex.
Penal Code Ann. § 1.07(a)(39) (West Supp. 2011).





[4]Cammack
was driving a borrowed vehicle, which indicated he had a right to temporarily
possess the vehicle where the cocaine was found.  See Menchaca
v. State, 901 S.W.2d 640, 652 (Tex. App.—El Paso 1995, pet. ref’d) (holding
appellant’s control over borrowed vehicle raised inference he knew of drugs in
vehicle).