In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00218-CR

                                                ______________________________

 

 

                                 SHANNON KEITH FINLEY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the Sixth
Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 23569

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            Shannon
Keith Finley was convicted by a jury for a third offense or more, repeat
offender driving while intoxicated (DWI) offense (Tex. Penal Code Ann.
§§ 12.42, 49.09(b)
(West Supp. 2011) and was sentenced to seventeen years’ imprisonment.  On appeal, Finley raises four points, arguing
that the trial court should have:  (1)
granted his motion for change of venue, (2) granted his motion to suppress the
evidence springing from a traffic stop which led to his arrest, (3) included
an instruction in the jury charge to allow the jury to consider a factual question
of whether the traffic stop was legal, and (4) excluded the results of Finley’s
blood test, which was drawn by a person whom Finley alleges was not qualified
to do so.  

            After
considering Finley’s points, we affirm the judgment of the trial court. 

 

I.         Change of Venue Not Mandatory

 

            The facts giving
rise to Finley’s motion for change of venue have their origins in an accusation
that Finley had committed murder—an accusation which was later dropped.  In 2008, the “severely damaged” body of
Brandon McClelland, an African-American man, was found in the middle of a farm
road in Lamar County.  Caucasians Finley,
and his then-alleged co-conspirator, Ryan Crostley, were charged in the
supposed dragging death of the decedent because they were the last people seen
with McClelland while he was alive.  News
concerning the circumstances surrounding McClelland’s death sparked racially
charged riots and protests, which received widespread media coverage.  Finley and Crostley were arrested and spent
eight months in jail “before all charges were dropped after a gravel truck
driver came forward with information he may have been the one that struck
McClelland.”  

            Due to the
revelation by the gravel truck driver, the murder charges were dropped in June
2009.  Finley alleges that “[b]y the Fall
of 2009, it was known in the Paris, Texas law enforcement community that Finley
and Crostley were planning to file a civil rights action against individuals
involved in their prosecution.”  On
October 19, 2009, Finley and Crostley, who were driving separate vehicles, were
both independently stopped and arrested for DWI within close temporal proximity
of each other.  Finley and Crostley sued
Lamar County District Attorney Investigator Chris Brooks, Texas Department of
Public Safety Trooper Stacy McNeal, and special prosecutor Toby Shook for false
imprisonment and malicious prosecution in January 2010.  The lawsuit sparked further publicity.  Citing the publicity concerning the death of
McClelland and his arrest and release, together with media publicity regarding
the lawsuit Finley had filed, Finley maintained that he could not receive a
fair trial in Lamar County and moved for a change of venue. 

            “To prevail
on a motion to change venue, a defendant must show an inability to obtain an
impartial jury or a fair trial in the place of venue.”  Salazar
v. State, 38 S.W.3d 141, 149–50 (Tex. Crim. App. 2001) (citing Willingham v. State, 897 S.W.2d 351, 357
(Tex. Crim. App. 1995)).  We review a
trial court’s ruling on a motion for change of venue under an abuse of
discretion standard.  Id. at 150.

            “When
outside influences affecting the community’s climate of opinion as to a defendant
are inherently suspect, the resulting probability of unfairness requires
suitable procedural safeguards, such as a change of venue, to assure a fair and
impartial trial.”  Bell v. State, 938 S.W.2d 35, 46 (Tex. Crim. App. 1996).  However, the mere fact that media attention
has been aroused does not “automatically establish prejudice or require a
change of venue; jurors do not have to be totally ignorant of the facts and
issues of a particular case.”  Id. 
Rather, “to justify a change of venue based on media attention, a
defendant must show that the publicity about the case was pervasive,
prejudicial and inflammatory.”  Salazar, 38 S.W.3d at 150 (citing Bell, 938 S.W.2d at 46).  “The trial court may use voir dire to help
gauge the community climate; however, regardless of the successful
qualification of a jury panel, the evidence adduced during the venue hearing
may show that a change of venue is necessary to assure a fair trial.”  Bell,
938 S.W.2d at 46.

            In support
of his motion to transfer venue, Finley attached two news articles.  The first of these articles was published
October 21, 2009, in the Paris newspaper.[1]
 This article reminded readers that while
Finley and Crostley “became widely known after their arrest in the death of
McClelland,” both consistently maintained their innocence, and the “charges
were dismissed after a truck driver came forward to say he might have been the
one to hit McClelland.”  The article went
further to state that the duo “were charged with McClelland’s death in part
because of acquaintances who told police the two men talked about his death and
were the last people to be with McClelland on the night he died.”  The second news item was a January 21, 2010,
newspaper article in the same newspaper that announced Finley’s DWI indictment,
identifying him as “a key figure in the investigation of the 2008 death of
Brandon McClelland.”  The State filed an
affidavit challenging the contention in the motion that the local populace had
been so tainted by the publicity that Finley would be unable to obtain a fair
trial. 

            The evidence
presented at the venue hearing included not only the October 21, 2009, news
article, but three others published by the same newspaper on January 22, 2010,
January 27, 2010, and November 10, 2010. 
The January 22 and November 10 articles repeated the news that Finley
had been arrested and charged in this case with DWI, had been charged in
McClelland’s death, and that the murder charge was dropped after a truck driver
admitted that his vehicle might have struck McClelland.  In addition to listing these facts, the
January 27 article discussed the lawsuit filed by Finley and Crostley alleging “there
was no significant evidence against them, but they were subjected to months in
jail, defamation and untrue accusations despite the fact that there was no
evidence.”   

            Finley also
introduced the testimony of private investigator Ray Ball, who investigated the
murder charges.  After speaking with “a
lot of people” representing “a pretty good cross sample of the community” with
respect to “the issue of a fair trial,” Ball testified,

There’s
a lot of racial tensions brought into town with [Finley’s and Crostley’s] names
connected to it. . . . After the arrest on the DWI, the people I came into
contact who were not even involved in the case with [Crostley] and [Finley]
both—from both sides—they seemed to build their resentment to—if they were
against these two young men, it cemented their beliefs.  If they were for these young men, they were
confused and not understanding the situation, how it could have happened, et
cetera. 

 

            During
voir dire, eleven hands were raised when the veniremembers were asked whether
they knew Finley or if they had read his name in the newspaper.  Nine of those were stricken for cause, but no
challenge for cause was granted as to two of them (who both swore that they
could remain neutral).  A few struck
veniremembers had seen Finley’s name in the paper, and at least one had formed
the opinion that he was an habitual offender. 
On the other side of the spectrum, one stricken veniremember stated he
knew of the attempted prosecution of Finley regarding the dragging death and
felt “like he’s just being targeted now.” 
In any event, none of these veniremembers were seated on the panel of
twelve,[2]
and there were no objections to the panel. 


            To justify a
change of venue based on excessive media attention, a defendant must show that
the publicity about the case was pervasive, prejudicial, and inflammatory.  Rodgers
v. State, 162 S.W.3d 698, 712 (Tex. App.—Texarkana 2005), aff’d, 205 S.W.3d 525 (Tex. Crim. App. 2006).  Where evidence as to the effect of media coverage
is conflicting, the trial court (who is free to evaluate the credibility of all
the witnesses and their testimony) does not abuse its discretion in denying a
motion to change venue.  Id.   All
of the articles presented by Finley were clear in one aspect—the murder charges
against Finley were dropped due to the admission by the truck driver that he
might have killed McClelland, an explanation that would have exculpated Finley
of responsibility in the death.  The
evidence regarding the effect of the publicity in this case created mixed
reactions as to Finley’s guilt or innocence—a fact confirmed by Ball’s
testimony.  Because the effect of the
media publicity was conflicting and none of the seated members of the jury had
heard of Finley, the trial court could find that Finley did not show an
inability to obtain an impartial jury or a fair trial.  Salazar,
38 S.W.3d at 150; Rodgers, 162 S.W.3d
at 712.  Therefore, there was no abuse of
discretion in denying Finley’s motion to change venue.  

            We overrule
Finley’s first point of error. 

 

II.       No Error in Overruling Motion to Suppress 

 

            We review a
trial court’s decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Graves v. State, 307 S.W.3d 483, 489
(Tex. App.—Texarkana 2010, pet. ref’d); Rogers
v. State, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref’d). While
we defer to the trial court on its determination of historical facts and
credibility, we review its application of the law and determination on
questions not turning on credibility de novo. Carmouche v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997); Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Graves,
307 S.W.3d at 489.  We also afford
deference to a trial court’s “application of law to fact questions” (also known
as “mixed questions of law and fact”) if the resolution of those questions
turns on an evaluation of credibility and demeanor.  Guzman,
955 S.W.2d at 89.  Since all the evidence
is viewed in the light most favorable to the trial court’s ruling, we are
obligated to uphold the denial of Finley’s motion to suppress if it was
supported by the record and was correct under any theory of law applicable to
the case.  Carmouche, 10 S.W.3d at 327–28; State
v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  

            Law
enforcement officers may stop and briefly detain persons suspected of criminal
activity on less information than is constitutionally required for probable
cause to arrest.  Terry v. Ohio, 392 U.S. 1, 22 (1968).  To initiate an investigative stop, the officer
must possess a reasonable suspicion based on specific, articulable facts that,
in light of the officer’s experience and general knowledge, would lead the
officer to reasonably conclude that the person detained actually is, has been,
or soon will be engaged in criminal activity. 
United States v. Sokolow, 490
U.S. 1, 10 (1989); Garcia v. State,
43 S.W.3d 527, 530 (Tex. Crim. App. 2001). 
These facts must be more than a mere hunch or suspicion.  Davis v.
State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  

            Whether the
officer’s suspicion was reasonable is evaluated based on “an objective standard
that disregards any subjective intent of the officer making the stop and looks
solely to whether an objective basis for the stop exists.”  Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  It should also be based on the totality of
the circumstances.  See Derichsweiler v. State,
348 S.W.3d 906, 914 (Tex. Crim. App. 2011). 

            At the
suppression hearing, Officer James Cole Sain testified that Finley’s conduct
attracted his attention at “ten or eleven o’clock” at night because he was “swerving
within his lane” and made an “unusually wide right turn.”  This action prompted Sain to turn on the
in-unit video camera.  Our review of the
video recording demonstrated that Finley weaved within his lane.  Based upon his training and experience, Sain
believed that Finley was driving while intoxicated.  

            Finley
argues that the video recording fails to establish that Finley committed any
violation of the Texas Transportation Code.[3]  However, there is no requirement that a
traffic regulation be violated before an officer has reasonable suspicion to
justify a stop of a vehicle.  State v. Alderete, 314 S.W.3d 469, 473 (Tex.
App.—El Paso 2010, pet. ref’d) (police officers trained to detect persons
driving while intoxicated had reasonable suspicion to stop driver suspected of
driving while intoxicated after observing driver continuously swerving within a
lane for a distance of one-half mile, even though driver did not violate any
traffic regulations).  Finley also cites
to cases relying on alleged Texas Transportation Code violations as the basis
for the stop.  Yet, Sain stopped Finley
for suspected DWI.  An officer is
justified in stopping a driver based on a reasonable suspicion of DWI, even in
the absence of a traffic violation.  James v. State, 102 S.W.3d 162, 172 (Tex.
App.—Fort Worth 2003, pet. ref’d); Cook
v. State, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  

            As
the finder of fact, the trial court could have taken Sain’s observations of
Finley’s conduct prior to the start of the video recording as credible.  Based upon the testimony, it could have found
that weaving within a lane and making an unusually wide turn during the night
hours would objectively lead a reasonable officer to conclude that Finley was
not under the full control of his faculties due to intoxication.  Moreover, after our review of the video
recording—which we believe demonstrates that Finley’s car was weaving within
the lane—we cannot say that the trial court abused its discretion in overruling
the motion to suppress.  This point of
error is overruled. 

III.      Finley Not Entitled to an Article 38.23
Jury Instruction

 

            Texas Code
of Criminal Procedure Article 38. 23(a) provides:

 

No evidence obtained by an officer or
other person in violation of any provisions of the Constitution or laws of the
State of Texas, or of the Constitution or laws of the United States of America,
shall be admitted in evidence against the accused on the trial of any criminal
case.

 

Tex. Code Crim. Proc.
Ann. art. 38.23 (West 2005).

 

            An Article
38.23 jury instruction is mandatory only when there is a factual dispute
regarding the legality of the search.  Pickens v. State, 165 S.W.3d 675, 680
(Tex. Crim. App. 2005); Brooks v. State,
642 S.W.2d 791, 799 (Tex. Crim. App. [Panel Op.] 1982); Malone v. State, 163 S.W.3d 785, 802 (Tex. App.—Texarkana 2005,
pet. ref’d).  To be entitled to the
submission of a jury instruction under Article 38.23(a), a defendant must
establish:

(1)        The
evidence heard by the jury must raise an issue of fact;

 

(2)        The
evidence on that fact must be affirmatively contested; and

 

 (3)      That
contested factual issue must be material to the lawfulness of the challenged
conduct in obtaining the evidence.

 

 Madden v. State, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)
(citations omitted).

 

            During
trial, Sain testified again that he believed Finley might be intoxicated
because he was “weaving within [his] lane,” and made a “strange, wide right
turn.”  He clarified that although the
described actions were not illegal, the conduct raised his suspicion that the
driver of the vehicle might be intoxicated.  
He said he believed that he observed Finley commit a traffic violation
when he “changed lanes within the intersection,” “hit the fog line,” “drove on
an unimproved shoulder,” and “made contact with the yellow divider in the center
of the road.”  

            In rebuttal
to this, Finley called private investigator and former police officer Ray Ball
as an expert to testify that he reviewed the arrest video recording made by
Sain and found no “reasonable suspicion of any illegal or criminal activity
going on.”  Ball testified,

I
then looked for - - the most common thing you see with a DWI is weaving in a
line of traffic, unable to maintain a straight pathway.  In this particular three or four or five
minutes of video that I watched, the only time that Mr. Finley deviated from
the lane he was in, was - - or within the lane he was in was when he signaled
and changed lanes. . . . I did not see him using the white line as a reference
- - the white line on the right side of the road.  I did not see him vary too close or vary far
from it.  He just selected a position,
and within reasonable inches probably - - nothing was obvious that he weaved
within the single lane of traffic. 

    
     

            “Jury
submission . . . is only required when facts are raised that are necessarily
determinative of the admissibility of the challenged evidence.”  Madden,
242 S.W.3d at 510, n.16.  Ball’s
testimony—the sole evidence introduced to contest or question the
reasonableness of the traffic stop—addressed only the events contained in Sain’s
video recording, not Finley’s earlier driving, which occurred before the
recording commenced.  Therefore, Ball’s
testimony could not have raised any fact issue with regard to Sain’s stated
justifications for the traffic stop, which were based wholly on that part of
Finley’s driving that antedated the video recording.  Sain’s uncontested testimony that Finley was
weaving within his lane and made an unusually wide turn at times not recorded
by the video recording was sufficient to support the legal conclusion that the
stop was based upon reasonable suspicion.  Therefore, although Ball’s testimony may have
raised issues of fact, meeting the first two elements of Madden, the factual issues raised by Ball cannot be considered “material
to the lawfulness of the challenged conduct in obtaining the evidence” because
it did not address some of the bases alleged by Sain to have been the reason
for the traffic stop.  Madden, 242 S.W.3d at 510 n.12 (citing Merriweather v. State, 501 S.W.2d 887,
891 (Tex. Crim. App. 1973) (when specific facts used by the court to determine
existence of probable cause were uncontested, defendant not entitled to jury
instruction concerning other facts—which were contested—that did not defeat the
finding of probable cause). 

            We find no
error in refusal of the Article 38.23 jury instruction.  Finley’s second point of error is
overruled.  

IV.      No Error in Admitting Finley’s Blood Test
Results 

 

            After the
arrest, Sain transported Finley to the Paris Regional Medical Center to “have a
licensed technician draw his blood.” 
Finley argues that the trial court erred in admitting the results of a
blood test[4]
over his objection that the blood was “drawn illegally under Article 38.23” by
Jennifer Neighbors, who was not a certified phlebotomist.  A trial court’s ruling on the admissibility
of evidence is reviewed for an abuse of discretion.  Casey
v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  An abuse of discretion occurs when the trial
court’s decision lies outside the zone of reasonable disagreement.  Id.

            Section
724.017 of the Texas Transportation Code provides that “[o]nly a physician,
qualified technician, chemist, registered professional nurse, or licensed
vocational nurse may take a blood specimen at the request or order of a peace
officer under this chapter.”  Tex. Transp. Code Ann. § 724.017(a)
(West 2011).  Referring to this section,
the trial court opined that Neighbors could be considered a “qualified
technician” and, therefore, qualified to draw blood specimens.  However, a phlebotomist is not automatically
considered to be a qualified technician under the statute.  Cavazos
v. State, 969 S.W.2d 454, 456 (Tex. App.—Corpus Christi 1998, pet. ref’d).  We look to the evidence in the record
presented on the phlebotomist’s training and experience.  State
v. Johnson, 336 S.W.3d 649, 663 (Tex. Crim. App. 2011).  

            Neighbors, a
certified nurses’ assistant, testified that she worked at the hospital in 2009
as a phlebotomist, and described in detail the process used to draw Finley’s
blood.  Although Neighbors had not been
certified by the licensing authorities as a phlebotomist, she was “trained by
the hospital” as a phlebotomist and was supervised by a certified phlebotomist,
who was present at the time the blood was drawn.  We note that Section 724.017 of the Texas
Transportation Code, in including “qualified technician” among those authorized
to draw blood, makes no requirement that the technician be licensed or
certified, only that they are qualified to perform the task. 

            A sister
court addressing this same issue has recently stated, “we know of no authority
for excluding from evidence the results of analyses performed on blood
specimens drawn by phlebotomists who do not possess licenses issued by the
State.”  Turnbow v. State, No. 02-09-00438-CR, 2010 WL 4486223, at *3
(Tex. App.—Fort Worth Nov. 10, 2010, no pet.) (mem. op., not designated for
publication).  Our independent research
reveals no authority requiring exclusion. 
Rather, the caselaw suggests that certification is not required if
qualification is demonstrated through specific training and experience as a
phlebotomist.  Johnson, 336 S.W.3d at 663; see
State v. Bingham, 921 S.W.2d 494, 496 (Tex. App.—Waco 1996, pet. ref’d) (“the
common-sense interpretation of the term ‘qualified technician,’. . . must
include a phlebotomist who a hospital or other medical facility has determined
to be qualified in the technical job of venesection or phlebotomy, i.e., the
drawing of blood”); Jackson v. State,
No. 08-07-00061-CR, 2009 WL 1552890, at *4 (Tex. App.—El Paso June 3, 2009, no
pet.) (mem. op., not designated for publication).[5]  

            The Texas
Court of Criminal Appeals has recently explained that a defendant who moves to
suppress blood test results under Article 38.23 on the allegation that the
person drawing blood is unqualified “has the burden of producing evidence of a
statutory violation.”  State v. Robinson, 334 S.W.3d 776, 779
(Tex. Crim. App. 2011).  Considering Neighbors’ testimony, we
cannot say that the trial court abused its discretion in finding that Finley
did not meet that burden, or in finding that Neighbors was qualified to draw
Finley’s blood. 

            Finley’s
last point of error is overruled. 

 

V.       Conclusion 

 

            We affirm the trial court’s
judgment. 

 

 

 

                                                                                    Bailey
C. Moseley

                                                                                    Justice

 

Date Submitted:          December
5, 2011       

Date Decided:             December
20, 2011

 

Do Not Publish           

 

 











[1]Paris
is the county seat of Lamar County and its principal municipality.





[2]One
of the veniremembers who knew Finley from the paper but swore neutrality was
listed as an alternate juror.  





[3]Sain
also testified Finley “drove on the improved shoulder, which is a ticketable
offense,” drove on the improved median, and changed lanes within 100 feet of an
intersection.  Finley’s arguments attempt
to refute the testimony regarding some of the Texas Transportation Code
violations, but does not rebut the contention that Finley was swerving within
his lane prior to the start of the video recording.  Further, Finley admits that “he touched the
fog line.”  





[4]Finley’s
blood alcohol level was 0.13.  

 





[5]Although
this unpublished case has no precedential value, we may take guidance from it “as
an aid in developing reasoning that may be employed.”  Carrillo
v. State, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref’d).  








e='mso-spacerun:yes'> Bald assertions
by a defendant that he was without the assistance of counsel at his prior
convictions are not sufficient to overcome the presumption of regularity of the
records before the court in the case.  Id.; see
Taylor v. State, 470 S.W.2d 663, 663
(Tex. Crim. App. 1971) (no error in admission at penalty stage of certified
copies of judgment and sentence which were silent as to whether defendant had
been represented by counsel where no objection made at admission of documents
and “no claim [was] advanced . . . that at the time of such conviction the
appellant was indigent, without counsel and did not waive the right of counsel,
or that he was deprived of counsel in any manner”). “The presumption of
regularity prevails.”  Chancy v. State, 614 S.W.2d 446, 447
(Tex. Crim. App. [Panel Op.] 1981).  





[11]Contrast Hise v. State, 640 S.W.2d 271, 271 (Tex. Crim. App. [Panel Op.] 1982);
Wright v. State, 640 S.W.2d 265, 270
(Tex. Crim. App. [Panel Op.] 1982); and
Rogers v. State, 640 S.W.2d 248, 255 (Tex.
Crim. App. [Panel Op.] 1981) (op. on reh’g) (which held once probationer is
continued on probation after hearing on motion to revoke, probation may not be
subsequently revoked without determination that new violation has been
committed).